RUCKER, tax-collector, *v.* MERCK.

No. 7977. June 10, 1931.

*J. B. G. Logan,* for plaintiff in error.   *A. J. Griffin,* contra.

RUSSELL, C. J.   (After stating the foregoing facts.)   It is provided in the act of Congress of June 7, 1924, c. 320, § 22· (which superseded the act of September 2, 1914, c. 293, § 28, as amended by the act of June 25, 1918, c. 104, § 2), that "The compensation, insurance, and maintenance and support allowance payable under parts II, III, and IV, respectively, shall· not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under part II, III, or IV; and *shall be exempt from all taxation* [italics ours].   Such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under parts II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable."   38 U. S. C. A. 217, § 454; U. S. Comp. Stat. 1925, 9127-½-22.   The sole question in this case as made by the petition for injunction to restrain the tax-collector of Banks County from selling property of Merck, the petitioner, is whether Merck's land, which he alleges to have been purchased with money which he alleges to have been derived exclusively from pension payments made for military service to the United States Government, is subject to levy for taxes. It appears to us that the enactment of the above Federal statute is decisive of the question.   So far as the evidence in the case goes, the judgment of the trial judge was amply sustained by

the testimony, not only of the veteran (Merck) himself, but of the former owner of the land from whom Merck purchased the property, and there is no contradiction that the entire purchase-price was paid at the time the deed was made. That the fund was derived from the Federal Government in payment for military services is undenied. The mere fact that subsequently Merck borrowed money from Moss and Chandler, and gave a deed upon his land as security for this subsequent indebtedness, does not in any wise affect the undisputed fact that the land was originally purchased several months previously with funds paid to him by the Federal government in compensation for his services and wounds received in the World War. Under the Federal statute this land is exempt from "all taxation." This regulation does not in any way affect the liability for taxes of any other property of which the defendant in error may be the owner. The Federal law protects any property which is purchased with the proceeds of pension, war-risk insurance, and other forms of compensation provided by the government. The exemption from taxation, of course, adds value to the governmental benefaction, and increases the net income derived from the investment of the fund given by the government to the soldier. In these days when taxes are extremely high (in some instances amounting to a greater per cent. than the income from some government bonds), it is easily to be seen that the compensation is appreciated by the Federal exemption from taxation. Furthermore, this act tends to encourage veterans of the World War to procure homes to shelter their heads in old age, instead of making speedy and foolish expenditures of the allotments which have been made them by the government.

It is suggested, however, that it is not within the power of the Federal government to exempt any property within the limits of the State from State taxation or from taxes imposed by counties as subordinate governmental divisions of the State. While standing for a strict construction of the constitution and a strict observance of all the rights of the sovereign States, we can not concur in this contention. The exclusive power to declare war was confided to Congress in the constitution of 1787. The power of the Federal government in the exercise of its power to make war is unlimited, absolute, and exclusive. And as a part of the war-making power it is the right of Congress to hold forth and to

confer pensions and privileges at the conclusion of a war, as a reward to those who are injured or died in defense of the flag. The fact that the United States government has held forth its willingness to pension and provide for those soldiers and their dependents who have died or been disabled in service contributes no little to that willingness on the part of our people to give vital force to the Federal Government to carry out the power entrusted to it by the Federal constitution. As a general rule of course the Federal government has no power to interfere with the processes of the State in the enforcement of local laws in regard to taxation in any commonwealth in the union. But we deem this principle not incompatible with the right of Congress, in the exercise of its exclusive power in the selection of successful means of making war (if it deems it necessary to go to war), to impose conditions upon the gifts or compensation the Federal government makes from its own funds. And these must necessarily be paramount, or provide exceptions to the ordinary operation of the State tax laws. If there be any truth in the old adage that the right to tax is the right to destroy, then the provision of the Federal statute, as applicable in this case, is merely a statement by the general government that its gifts to the soldier shall not be destroyed by any process, not even by the slow and grinding process of taxation.

*Judgment affirmed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*