HENDERSON, RESPONDENT, *v.* CITY OF MISSOULA ET AL., APPELLANTS.

(No. 7,753.)

(Submitted April 20, 1938. Decided May 10, 1938.)

[79 Pac. (2d) 547.]

*Mr. Fred W. Schilling,* for Appellants, submitted an original and a reply brief, and argued the cause orally.

*Mr. C. E. Comer,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to recover taxes paid under protest. Edmond J. Ouimet was totally and permanently disabled while serving in the United States Army during the World War. As a result of this disability and service he was granted and paid service compensation, pensions, and adjusted compensation by the United States.

In September, 1919, he married the plaintiff; they were divorced in 1930. On February 10, 1922, Edmond J. Ouimet was adjudged incompetent by the district court of the fourth judicial district of the state, and a guardian was appointed for him. He continued under guardianship until his death. On January 30, 1930, his guardian was authorized to purchase certain real estate for the benefit of his ward with funds received from the United States as pensions, compensation, and adjusted compensation. The title to the real estate was taken in the name of the guardian as trustee for his ward. In June, 1934, the guardian conveyed a life estate in this real property, with remainder over to the minor son of his ward.

Plaintiff, the mother of the child, after the death of her former husband was appointed guardian of her child's estate, consisting of this real property. The defendant city levied taxes against this property for the year 1936, which were paid by plaintiff, as guardian, under protest; she claiming the property to be exempt from all taxation. This suit followed. Judgment was entered by the trial court in favor of the plaintiff for the amount of the taxes paid under protest and restraining the city of Missoula from levying further taxes against the property until the disability of the minor child is removed. The appeal is from the judgment.

The pertinent portion of section 1998, Revised Codes, relating to exemptions of property from taxation is as follows: " * * * And all property, real or personal, in the possession of legal guardians of incompetent veterans of the World War or minor dependents of such veterans, where such property

is funds or derived from funds received from the United States as pension, compensation, insurance, adjusted compensation, or gratuity, shall be exempt from all taxation as property of the United States while held by the guardian, but not after title passes to the veteran or minor in his or her own right on account of removal of legal disability."

Our Constitution provides, with reference to exemptions from taxation, as follows: "The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries shall be exempt from taxation; and such other property as may be used exclusively for the agricultural and horticultural societies, for educational purposes, places for actual religious worship, hospitals and places of burial not used or held for private or corporate profit, institutions of purely public charity and evidences of debt secured by mortgages of record upon real or personal property in the state of Montana, may be exempt from taxation." (Sec. 2, Art. XII.)

All property within the state is subject to taxation unless it is included within some of the exemptions mentioned in section 2, Article XII, supra, as provided by section 1 of the same Article.

The case was tried below in effect upon an agreed statement of facts. The sole question there, as here, may be stated as follows: Does the real property in question, in the circumstances of the case, fall into any of the classes of property enumerated in section 2, Article XII, as exempt? If the property is not within some one of these classes, then the quoted portion of section 1998 is violative of section 1, Article XII, of the Constitution. Manifestly, it cannot be so classified unless it is property of the United States.

We said in the case of *State ex rel. Tipton* v. *Erickson,* 93 Mont. 466, 19 Pac. (2d) 227, 228: "In the determination of the question of the constitutionality of any Act, a statute, if possible, will be construed so as to render it valid. (*Hale* v. *County Treasurer,* 82 Mont. 98, 265 Pac. 6.) It is presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible so to do. (*State ex rel. Toomey*

v. *State Board of Examiners,* 74 Mont. 1, 238 Pac. 316, 320.)
The invalidity of a statute must be shown beyond a reasonable
doubt before the court will declare it to be unconstitu-
tional. (*Herrin* v. *Erickson,* 90 Mont. 259, 2 Pac. (2d) 296.)
And a statute will not be held unconstitutional unless its viola-
tion of the fundamental law is clear and palpable. (*Hill* v. *Rae,*
52 Mont. 378, 158 Pac. 826, L. R. A. 1917A, 495, Ann. Cas.
1917E, 210.)''

Section 450 of Title 38, U. S. C. A., provides that payments of
compensation, adjusted compensation, pensions, etc., may be
paid by the Veterans' Administration to the guardian of an
incompetent claimant appointed by a court of competent ju-
risdiction of the state of the residence of the claimant. It fur-
ther provides that when such guardian, in the opinion of the
administrator of the Veterans' Administration, is not properly
executing the duties of his trust or is attempting to collect
inequitable or illegal pay, fees, commissions, or allowances for
duties performed or expenses incurred, such administrator or
his attorney is authorized to appear in any court, either of
original or appellate jurisdiction, and make proper presenta-
tion of these matters. If such guardian refuses to make proper
account upon notice, the administrator may refuse to make fur-
ther payments to him. The administrator is authorized to
appear or intervene in any court as an interested party in any
litigation instituted by himself, or otherwise, directly affecting
any money paid to such guardian. Any funds remaining in
the hands of a guardian of an incompetent veteran, which under
the laws of the state in which the ward has his residence would
escheat to the state, escheat to the United States, and it is the
duty of such guardian to remit them to the Veterans' Adminis-
tration after the payment of proper charges of administration.

Section 454, which was in effect until August 12, 1935, and
section 454a of the same Title, exempt the payments made to
veterans, such as those here before us, from taxation. The
benefit of this exemption does not, under the decisions of the
United States Supreme Court, extend to real property which
has been purchased with the proceeds of pensions, compensa-

tion, etc. (*Lawrence* v. *Shaw*, 300 U. S. 245, 57 Sup. Ct. 443, 81 L. Ed. 623, 108 A. L. R. 1102; *Trotter* v. *Tennessee*, 290 U. S. 354, 54 Sup. Ct. 138, 78 L. Ed. 358.)

The question has frequently arisen in cases of insolvency of banks in which the proceeds of pensions, compensation, etc., had been deposited, as to whether a preference might be claimed on the theory that such funds were the property of the United States, giving effect to the provisions of section 450 of Title 38, U. S. C. A. These cases turn upon the point whether the title to these funds upon payment to the guardian of the veteran remains in the United States or passes to the veteran.

There is diversity of opinion among the state courts, some holding that the title does not pass. (*Anderson* v. *Olivia State Bank*, 186 Minn. 396, 243 N. W. 398, 83 A. L. R. 1086; *State ex rel. Spillman* v. *First State Bank*, 121 Neb. 515, 237 N. W. 623.) Others holding to the contrary. (*Shippee* v. *Commercial Trust Co.*, 115 Conn. 326, 161 Atl. 775; *Puffenbarger* v. *Charter*, 112 W. Va. 488, 165 S. E. 541.) After the rendition of these decisions, the Supreme Court of the United States, in the case of *Spicer* v. *Smith*, 288 U. S. 430, 53 Sup. Ct. 415, 77 L. Ed. 875, 84 A. L. R. 1525, decided that upon payment by the United States to the guardian of an incompetent, the title to these funds passed. All of these decisions were rendered subsequent to the amendment of section 1998 in 1931, which introduced into that section the quoted portion, supra.

When our legislature met in 1931, with section 450 of Title 38, U. S. C. A., in effect, it was a debatable question whether, upon the payment of these funds to the guardian of an incompetent veteran, the title passed or remained in the United States. In the absence of section 1998 we would be inclined to follow the decision of the Supreme Court of the United States. By this statute the legislature declared the policy of the law of this state as to when the title to these funds vested.

This court, in the case of *State* v. *Gateway Mortuaries, Inc.*, ▌ 87 Mont. 225, 287 Pac. 156, 157, 68 A. L. R. 1512, said: "What is the public policy of a state, and what is contrary to it, is not to be measured by the private convictions or notions

of the persons who happen to be exercising judicial functions, but by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts. When, however, the legislature has spoken upon a particular subject and within the limits of its constitutional powers, its utterance is the public policy of the state. (Mr. Chief Justice Brantly, in *MacGinniss* v. *Boston & Mont. C. C. & S. M. Co.*, 29 Mont. 428, 75 Pac. 89, and *Parchen* v. *Chessman*, 49 Mont. 326, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681.)'' The legislature in declaring this policy was acting within its power, unless it may not determine when and in whom the title to the property or funds vests, which is attempted to be transferred or conveyed.

A familiar illustration of a valid exercise of this legislative power is found in section 6935, Revised Codes. Under this statute if A conveys real property to B, who fails to record his conveyance, and A thereafter conveys to C, who is a subsequent purchaser in good faith for a valuable consideration, and who thereupon first records his conveyance, C takes the title as against B. Statutes of this character are upheld as being valid. (12 C. J. 1058; *Vance* v. *Vance*, 108 U. S. 514, 2 Sup. Ct. 854, 27 L. Ed. 808; *Conley* v. *Barton*, 260 U. S. 677, 43 Sup. Ct. 238, 67 L. Ed. 456.)

Since a debatable question existed under the federal statutes ██ ██ as to whether the title to funds paid to a guardian of an incompetent veteran by the United States remained in it, the legislature might well, instead of leaving the matter of declaring the policy of the law in that respect to the courts, exercise that power itself and thereby settle the question in this jurisdiction.

It being an admissible construction that the title to these funds remained in the United States after their delivery to the guardian, and one which some courts by able opinions have adopted, and the legislature having the power and the right to declare the policy of the law, we must, in the light of the rules by which we are guided in determining the constitutionality of Acts of the

legislature, uphold section 1998 as being a valid exercise of legislative power.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART and ANGSTMAN concur.

MR. CHIEF JUSTICE SANDS takes no part in the above decision.

MR. JUSTICE MORRIS:

I dissent. The question here involved is whether the minor son of a veteran of the World War is exempt from taxation on certain realty in the city of Missoula, purchased with funds received by the guardian of the deceased father.

In the year 1936 the city of Missoula levied general taxes against the property of the minor, which were paid by the plaintiff under protest, and this action was brought to recover the amount paid and to restrain the defendant from future levies during the minority of the minor or while the title to the property remains in him. Judgment is prayed for accordingly.

Defendant's demurrer to the complaint was overruled and it was allowed ten days to answer. The answer admits all the allegations of the complaint, except that the minor's property is exempt from taxation, which claim of exemption is denied on the ground that that part of section 1998, Revised Codes, under which the exemption is claimed, is in contravention of section 2, Article XII of the Constitution. The part of section 1998 thus contested is as follows: "All property, real or personal, in the possession of legal guardians of incompetent veterans of the World War or minor dependents of such veterans, where such property is funds or derived from funds received from the United States as pension, compensation, insurance, adjusted compensation, or gratuity, shall be exempt from all taxation as property of the United States while held by the guardian, but not after title passes to the veteran or minor in his or her own right on account of removal of legal disability." The reply reiterated the right of exemption. By stipulation the action

was submitted to the court upon the pleadings, and the court was requested to make findings.

The court found that all the funds used to purchase the property were derived by the father of the minor from compensation and awards from the United States to the soldier; that the property was in the possession of the guardian of the minor for the minor but was "exempt from all taxation as property of the United States so held and possessed by such guardian." The taxes collected were ordered repaid to the guardian with interest and the injunction was granted. From such judgment the defendants appeal.

The five assignments of error made are predicated upon the one contention that that part of section 1998 quoted above is unconstitutional.

The judgment of the trial court is predicated upon an agreed statement of facts, which involves questions of law only, and, such being the case, the action comes here under the rule that, "where * * * there is no dispute as to the facts, this court is in as favorable a position in applying the law as the district court." (*Birdwell* v. *Three Forks Portland Cement Co.*, 98 Mont. 483, 40 Pac. (2d) 43, 47.)

In taking up the consideration of the question of the constitutionality of that part of section 1998 quoted above, we proceed under certain well-defined rules which are laid down and supported by numerous citations in *State ex rel. Du Fresne* v. *Leslie*, 100 Mont. 449, 50 Pac. (2d) 959, 101 A. L. R. 1329, and which will be mentioned here only incidentally. We there said (page 454): "Every doubt must be resolved in favor of the validity of the legislative Act"; but that "with reference to the subjects upon which the Constitution assumes to speak, its declarations are conclusive upon the Legislature."

I think the Constitution has spoken in very clear terms on the subject of exemption from taxation. Section I, Article XII, provides: "The necessary revenue for the support and maintenance of the state shall be provided by the legislative assembly, which shall levy a uniform rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valua-

tion for taxation of all property, except that specially provided for in this Article.  *  *  *  ''  In construing this section, this court said, in *Mid-Northern Oil Co.* v. *Walker*, 65 Mont. 414, 421, 211 Pac. 353, 354, ''Taxation is the rule and exemption the exception,'' and one claiming an exemption has the burden of showing that he comes within some definite exception to the rule. In *Hale* v. *Jefferson County*, 39 Mont. 137, 141, 101 Pac. 973, it was said (page 141) : ''Apart from certain exemptions specifically mentioned, all property in the state is subject to taxation.  (Const., secs. 1, 3, Art. XII.) ''

Section 2 of Article XII provides: ''The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public. libraries shall be exempt from taxation; and such other property as may be used exclusively for the agricultural and horticultural societies, for educational purposes, places for actual religious worship, hospitals and places of burial not used or held for private or corporate profit, institutions of purely public charity *and evidences of debt secured by mortgages of record upon real or personal property in the state of Montana,* may be exempt from taxation.''  The part in italics was an amendment submitted to the electors by Chapter 142, Laws of 1917, and duly adopted, and has no application here.

It will be noted that the property mentioned in the first sentence of the section is absolutely exempt and that mentioned in the second may be exempted.  The second group may be exempted at the discretion of the legislature.  This court has heretofore construed this section in a number of decisions.

That part of section 1998 quoted above which is in question here was added to the section by Chapter 98 of the Laws of 1931, and, according to *Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878, is in excess of the exemptions authorized by the Constitution.  It was said in the *Cruse-Fischl Case* (page 262) :

''The subject 'Revenue and Taxation' is covered by Article XII of the Constitution.  By section 2 of that Article two classes of property, and only two, were deemed proper subjects of relief from taxation.  The first comprises public property—

that is, the property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries—and with respect to this property the Constitution declares that it shall be exempt. The second class comprises property of a quasi public character—that is, property used exclusively for agricultural and horticultural societies, educational purposes, places of actual religious worship, hospitals and places of burial not used or held for private or corporate profit, and institutions of purely public charity. The legislature is permitted, but not required, to relieve any or all of the property of this class from taxation, *and it has all been declared to be exempt.* (Sec. 2499, Rev. Codes.)

"There cannot be a difference of opinion concerning the meaning of the language employed in section 2 above. The authority to tax any property of the first class is denied the lawmakers absolutely. The provision is mandatory in character, is self-executing and the legislation thereafter enacted declaring property of that class exempt added nothing to its force or effectiveness.

"When we recall that our Constitution is not a grant of authority, but a limitation upon the powers of government—that our legislature exercises inherent and not delegated authority—the reference to the second class becomes equally explicit. While the language is permissive in form, it is prohibitory in effect. *The Legislature may extend the exemption to the property enumerated, but it cannot go further or include any other.* This is the construction uniformly placed upon such provisions, and is commanded by the rule of interpretation contained in the Constitution itself. (Sec. 29, Art. III.)

"Section 2 thus expresses the entire will of the people with respect to the property absolutely exempt and the extent of legislative power to create exemptions. Section 2499, Revised Codes, is therefore to be construed strictly; that is to say, nothing is to be implied, for *the legislation is as broad in its terms as the* [constitutional] *limitation permits, and in its enactment the lawmakers exhausted their power to relieve property from taxation.*

All other property within the state is liable to taxation. (Sec. 2498, Rev. Codes.)''

Section 2499, Revised Codes, mentioned above, was the number of the section in the 1907 Codes that was brought forward into the 1921 Codes as section 1998, and is the same section in question here, except section 1998 now carries the 1931 amendment hereinbefore quoted. It will be noted that the decision in *Cruse* v. *Fischl* holds in substance that the legislative power to create exemptions under the second division of section 2, Article XII of the Constitution, was exhausted by the enactment of section 2499 of the 1907 Codes, long before the amendment of 1931 was added to section 1998. (See, also, *City of Kalispell* v. *School Dist.*, 45 Mont. 221, 122 Pac. 742, Ann. Cas. 1913D, 1101; *Hale* v. *Jefferson County*, supra; *Union Bank & Trust Co.* v. *Moore*, 62 Mont. 132, 204 Pac. 361; *Stoner* v. *Timmons*, 59 Mont. 158, 196 Pac. 519; *Mid-Northern Oil Co.* v. *Walker*, supra; *State ex rel. Mills* v. *Dixon*, 66 Mont. 76, 213 Pac. 227; *Town of Cascade* v. *County of Cascade*, 75 Mont. 304, 243 Pac. 806; *In re Wilson's Estate*, 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367.)

The decisions of other jurisdictions to the extent I have investigated them are generally in harmony with ours. The Constitution of California has a multitude of exemptions, and as evidence of a clear intent to confine exemptions strictly to express constitutional authority, in November, 1926, adopted section 1¼, Art. XIII, as an amendment to its Constitution, exempting from taxation property of honorably discharged soldiers and sailors to the extent of $1,000, and that is restricted in various ways; one restriction being that the exemption shall not be operative if the claimant or his wife owns property of the value of $5,000 or more.

Iowa has no constitutional provision regulating exemptions, and Oklahoma, in adopting its Constitution, provided therein that exemptions provided for by territorial statutes should remain operative until otherwise provided by law. Consequently, citations from those states would not be applicable here. All citations from Oklahoma by plaintiff were controlled by terri-

torial statutes that had not been altered since the adoption of its Constitution.

An article appearing in the North Carolina Law Review on ''Exemption of Property Bought with Federal War Risk Insurance or Compensation Money,'' by William Medford, I think worthy of repetition here in part:

''An Act of Congress provides that the money payable to veterans of the World War shall be exempt from 'all taxation.' A later section adds that 'no sum payable under this chapter * * * shall be subject * * * to national or state taxation.' Three state supreme courts have construed these sections recently with somewhat varying results. The Kansas court decided that corporate securities bought with federal insurance money were not exempt from state taxation. (*State ex rel. Smith, Atty. Gen.,* v. *Board of County Commrs. of Shawnee County,* 1931, 132 Kan. 233, 294 Pac. 915.) The Georgia court decided that land bought with such money was exempt. (*Rucker, Tax Collector,* v. *Merck,* 1931, 172 Ga. 793, 159 S. E. 501.) The North Carolina court held that land and an automobile bought in part with compensation money could not escape any part of the assessed taxation. (*Martin* v. *Guilford County et al.,* 1931, 201 N. C. 63, 158 S. E. 847, 76 A. L. R. 978.)

''The Georgia court in reaching its conclusion that, under these statutes, land bought with federal insurance money was exempt from taxation, applied the specific exemption of a 'sum' to property bought with this 'sum' as well. The underlying reason for the decision seems to have been one of policy. * * * In view of this decision some pertinent questions might be raised as to what extent the Georgia court would carry its exemption policy. Would land for which this exempted land had been exchanged also be exempt? Would personal property bought either with the 'sum' or with the proceeds of the sale of this exempted land be exempt? Would profit realized from transactions involving this exempted sum be exempt even as to the income tax? Does this exemption apply with reference to the inheritance tax? If either the legal justification or the policy of this decision is followed to its logical conclusion it seems

that these questions would have to be answered in the affirmative. The complications and absurdities to which such holdings would lead are apparent. It would be possible for war veterans to build up small fortunes that the state could not tax. It would be a very difficult task to administer the tax laws. The policy of the decision might be further questioned. Is it the function of the state to protect payments by the federal government to veterans of National Wars? Granting this, it does not seem that the protection should take the form of exempting real estate from taxation.''

The Act of Congress exempting the compensation paid to veterans or their dependents from taxation expressly provides that such compensation shall be exempt only so long as it is retained in the form of money or its equivalent, ready to be used as need arises to provide for the welfare of the veteran or his dependent, and the immunity ceases when the money is invested. The decisions of the Supreme Court of the United States construing the Act are illuminating here.

In *Trotter, Guardian,* v. *Tennessee,* 290 U. S. 354, 54 Sup. Ct. 138, 78 L. Ed. 358, decided December 4, 1933, it is said:

''Joseph A. Leake became mentally incompetent by reason of his service in the Army during the World War. Since May, 1922, the United States government has paid compensation to his guardian at the rate of $100 a month in accordance with the provisions of Part II of the World War Veterans' Act, 38 U. S. C. A., sec. 471 et seq., and disability benefits at the rate of $57.50 a month under a policy of war risk insurance in accordance with the provisions of Part III of the same Act. (38 U. S. C. A., sec. 511 et seq.) On June 3, 1924, the guardian purchased land and buildings in Blount county, Tenn., paying therefor $2,500 in cash out of the moneys theretofore received from the government, $2,000 in promissory notes, which have been paid out of later moneys derived from the same source, and $1,500 by assuming the payment of a mortgage which has been discharged by the use of the proceeds of fire insurance covering one of the buildings. State and county taxes assessed upon the land for the year 1929 are in arrears with interest and

penalties. The state of Tennessee, the respondent here, brought suit in the chancery court to declare the tax a lien enforceable by a sale. The guardian and his ward answered that by force of the federal statutes the land was exempt. The chancellor sustained the defense and dismissed the complainant's bill. The supreme court of Tennessee reversed, and directed the court of chancery to award judgment to the state. (*State* v. *Blair*, 165 Tenn. 519, 57 S. W. (2d) 455.) The case is here on certiorari.

"By the World War Veterans' Act, 'The compensation, insurance, and maintenance and support allowance payable under Parts II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Parts II, III, or IV; and shall be exempt from all taxation.' (Act of June 7, 1924, c. 320, sec. 22, 43 Stat. 613; 38 U. S. C., sec. 454 (38 U. S. C. A., sec. 454); cf. 38 U. S. C., sec. 618 (38 U. S. C. A., sec. 618.)

"Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. (*Chicago Theological Seminary* v. *Illinois*, 188 U. S. 662, 674, 23 Sup. Ct. 386, 47 L. Ed. 641.) On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers. The moneys payable to this soldier were unquestionably exempt till they came into his hands or the hands of his guardian. (*McIntosh* v. *Aubrey*, 185 U. S. 122, 22 Sup. Ct. 561, 46 L. Ed. 834). * * * We think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support allowance, payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. Veterans who choose to trade in land or in merchandise, in bonds or in shares of stock, must pay their tribute to the state. If immunity is to be theirs, the statute conceding it must speak in clearer terms than the one before us here.

"The judgment of the supreme court of Tennessee disallowing the exemption has support in other courts. (*State* v.

*Wright,* 224 Ala. 357, 140 So. 584; *Martin* v. *Guilford County,* 201 N. C. 63, 158 S. E. 847, 76 A. L. R. 978.) There are decisions to the contrary, but we are unable to approve them. (*Rucker* v. *Merck,* 172 Ga. 793, 159 S. E. 501; *Atlanta* v. *Stokes,* 175 Ga. 201, 165 S. E. 270; *Payne* v. *Jordan,* 36 Ga. App. 787, 138 S. E. 262.) ''

In *Lawrence* v. *Shaw,* 300 U. S. 245, 57 Sup. Ct. 443, 81 L. Ed. 623, 108 A. L. R. 1102, decided March 1, 1937, it is said:

'' 'Where a guardian of a World War Veteran receives from the Veterans' Bureau of the United States Government, warrants or checks issued by said Government in payment of adjusted compensation or insurance due the guardian's ward, and said warrants or checks are deposited by the guardian in a depository, collected by it, and the proceeds are credited in the guardian's account carried in such depository, are such deposits subject to taxation by county and municipal authorities?' The state court answered this question in the affirmative, denying the federal right asserted.  *  *  *  [The *Trotter Case,* supra, is then quoted from at length.]   The World War Veterans' Act, 1924, provided that the compensation and insurance allowances should be 'exempt from all taxation.'   [38 U. S. C. A., sec. 454.]   The Act of 1935 is more specific, providing that the payments shall be exempt from taxation and shall not be liable to process 'either before or after receipt by the beneficiary.' [38 U. S. C. A., sec. 454a.]   There was added the qualification that the exemption should not extend 'to any property purchased in part or wholly out of such payments.' This more detailed provision was substituted for that of the earlier Act and was expressly made applicable to payments theretofore made. We think it clear that the provision of the later Act was intended to clarify the former rather than to change its import and it was with that purpose that it was made retroactive.

''The state court found no distinction with respect to taxability 'between stocks and bonds, and notes and bank deposits and other solvent credits.' Amplifying this position, counsel for respondent at this bar, while conceding that the warrants or

checks issued by the government would be exempt, and that if they were cashed the moneys thus received would likewise be exempt until they were invested, contended that if the guardian instead of cashing the warrants or checks deposited them in bank, the resulting bank credits would be taxable. We think that this contention is inadmissible. Congress has declared that the payments of benefits by the government shall be exempt not only before but 'after receipt by the beneficiary.' We cannot conceive that it was the intent of Congress that the veteran should lose the benefit of this immunity, which would attach to the moneys in his hands, by depositing the government warrants or checks in bank to be collected and credited in the usual manner. These payments are intended primarily for the maintenance and support of the veteran. To that end neither he nor his guardian is obliged to keep the moneys on his person or under his roof. As the immunity from taxation is continued after the payments are received, the usual methods of receipt must be deemed available so that the amounts paid by the government may be properly safeguarded and used as the needs of the veteran may require.

"The provision of the Act of 1935 that the exemption should not apply to property purchased out of the moneys received from the government shows the intent to deny exemption to investments, as was ruled in the *Trotter Case*. It is of course true that deposits in bank may be made under a special agreement by which the deposits assume the character of investments and would lose immunity accordingly. No such agreement is shown here. Nor are the bank balances shown to be the proceeds of investments. They are stipulated to be 'uninvested balances' of the government payments. Some reference was made at the bar to the possible effect of an allowance of interest upon bank deposits. It does not appear that there was such an allowance in this instance, and we do not suggest that a mere allowance of interest upon deposits would be enough to destroy an immunity where it would otherwise attach. We hold that the immunity from taxation does attach to bank credits of the veteran or his guardian which do not represent or flow from his invest-

ments but result from the deposit of the warrants or checks received from the government which such deposits are made in the ordinary manner so that the proceeds of the collection are subject to draft upon demand for the veteran's use. In order to carry out the intent of the statute, the avails of the government warrants or checks must be deemed exempt until they are expended or invested.''

The majority opinion proceeds on the theory that the property involved here, the use of which is in the minor, is property of the United States. This is clearly untenable under the Act of Congress mentioned and the two United States Supreme Court decisions above quoted from. It is there held, in language as clear and unambiguous as it is possible to make it, that the immunity from taxation ceases when the money awarded the veteran or his minor dependent is converted from money into investments in the form of lands and buildings. The view that the property involved here is ''property of the United States'' can be sustained upon no theory of law nor by the decisions of the federal courts, former decisions of this court, or our Constitution. The theory that federal authorities have, in some vague way, supervision over the funds in the hands of guardians of incompetent veterans or their minor dependents, has no bearing upon our tax exemption provisions as set out in our Constitution. Any power representatives of the federal government may have in looking after the welfare of veterans could have no application in an action such as that at bar, for the reason that the latest pronouncement by the United States Supreme Court (*Lawrence* v. *Shaw*, supra) holds that, in so far as federal authority is concerned, immunity from taxation ceases when the funds paid the veteran or his minor dependent are converted from money into investments. That decision is grounded on the Act of Congress of August 12, 1935, sections 3 and 5, 49 Stat. 607, 609, 38 U. S. C. A., secs. 54 note, 454a and note where these words are found: ''Such provisions shall not attach to claims of the United States arising under such laws *nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments.*''

The contention that the property involved here is "property of the United States" is clearly without merit. It is specifically provided by Act of Congress to be not exempt from taxation, and the construction of the Act by the Supreme Court in the *Lawrence Case,* merely declares what the unambiguous provisions of the statute provide. How, then, can any official of the federal government pursuing his duties towards protecting incompetent veterans from those who would cheat or defraud them proceed? Certainly not on the presumption that such property as that involved is property of the United States. It is very clear that the federal courts would not assume jurisdiction to enforce any such right grounded upon any such theory. If we accept, as we must, the construction placed upon the Act of Congress by the Supreme Court of the United States in the decisions heretofore cited, no ground is left for any "admissible construction that title to these funds remained in the United States," after such funds were invested in lands and houses.

Much is said in the majority opinion about public policy. Whether the public policy announced by the legislature is sound or not depends first upon whether the Act giving voice to such announcement be consonant with the provisions of the Constitution or not. The sole question here is whether or not the 1931 amendment to section 1998, Revised Codes, contravenes section 2 of Article XII of the Constitution of Montana, and public policy like "the flowers that bloom in the spring time has nothing to do with the case." It is difficult to understand why the question of public policy was intruded into the case, unless it be that it is always a convenient peg to hang a ragged argument upon. Any attempt to quote from decisions written by the late Chief Justice Theodore Brantly, to make public policy a pertinent issue here, is a wild misconception of the clearly expressed views of that distinguished jurist. The case of *MacGinniss* v. *Boston & Mont. C. C. & S. M. Co.,* 29 Mont. 428, 461, 75 Pac. 89, is quoted from to illustrate what public policy is. Of the part quoted the portion most pertinent obviously did not impress the majority. After outlining the source of public policy, the chief justice summed up by saying: "When,

however, the legislature has spoken upon a particular subject *and within the limits of its constitutional powers,* its utterance is the public policy of the state.'' The same statement on the question of public policy is made again by Chief Justice Brantly, speaking for the court, in *Parchen* v. *Chessman,* 49 Mont. 326, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681. To use a modified form of the usual expression suitable to the occasion: What the blue blazes does anyone care about the public policy of a statute if it be unconstitutional?

The 1931 amendment to section 1998, Revised Codes, is, in my opinion, clearly in conflict with section 2, Article XII of the Constitution, and therefore void.

The judgment of the district court should be reversed and the cause remanded with instruction to dismiss the action.

Rehearing denied June 1, 1938, MR. JUSTICE MORRIS dissenting.