HOWARD W. PARKER, TED HAMMOND, CHARLES E. HEYN, AND EMILIA CERISE, PLAINTIFFS AND APPELLANTS, *v.* THE COUNTY OF YELLOWSTONE, A POLITICAL SUB-DIVISION OF THE STATE OF MONTANA, MARJORY THOMPSON, AS COUNTY TREASURER OF SAID YELLOWSTONE COUNTY, T. A. COTHRON, AS COUNTY ASSESSOR OF SAID YELLOWSTONE COUNTY, CHRIS RUBICH, AS CLERK AND RECORDER OF SAID YELLOWSTONE COUNTY; CHARLES H. BARNEY, FRED C. PLATH AND ANTHONY HEALOW, AS THE COUNTY COMMISSIONERS OF SAID YELLOWSTONE COUNTY; VICTOR W. HANSEN, W. B. DOE, DUANE DUNBAR, WINFRED GRIFFING, RICHARD HADLEY AND J. E. REHARD, DEFENDANTS AND RESPONDENTS.

No. 10437.
Submitted June 15, 1962. Decided August 30, 1962.
374 P.2d. 328.

Harwood & Galles, Dale F. Galles (argued orally), Billings, for appellants.

William J. Speare, County Atty., Lamey, Crowley, Kilbourne, Haughey & Hanson, Thomas N. Kelley (argued orally), A. F. Lamey (appeared), Billings, for respondents.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an action to restrain the defendants from levying, assessing, and collecting, water and bond taxes, and to enjoin any and all further acts and proceedings pertinent to the County Water District of Billings Heights. From a judgment of the district court of Yellowstone County for the defendants, plaintiffs appeal.

The named plaintiffs are owners of land which has been included in the County Water District of Billings Heights; the named defendants are certain officials of Yellowstone County, Montana, and the directors of the County Water District of Billings Heights, which will be referred to hereafter as the Water District.

Approximately two miles northeast of Billings, Montana, lies an area known as Billings Heights. Close to 3,400 people reside in this area and some 900 homes and business establishments, as well as two schools, have been built in the area. At the present time neither a public water supply, nor a sewer system serves the area, consequently, the water and sewage needs of the inhabitants are served by the use of wells and septic tanks or cesspools.

In 1957, the Montana Legislature passed the "County Water District Act," sections 16-4501 to 16-4534, R.C.M.1947, which permits the residents of an area such as Billings Heights to create a district for the purpose of building, operating, and maintaining their own central water supply and distribution system.

Pursuant to the provisions of the afore-mentioned Act, the

Water District was established. The following sequence of events led to the establishment of the Water District.

On May 27, 1958, petitions were presented to the County Commissioners of Yellowstone County, requesting the establishment of the County Water District of Billings Heights. The commissioners resolved to set June 17, 1958, for an organizational hearing and to this end notice of this hearing was published in a newspaper, being the Billings Times, on May 29, and June 5, 1958.

On June 17, 1958, the Commissioners conducted the hearing at which protests were heard. The hearing was continued to June 27, 1958, at which time the Commissioners considered all the protests to date and made certain changes in the proposed boundaries.

On July 9, 1958, the Commissioners made a minute entry of its finding of the genuineness and sufficiency of the petition for creation of the Water District and the notice of hearing on the petition, and defined and established the boundaries of the Water District, and entered its finding that all lands which are benefited and no lands which are not benefited are included within the District.

On August 26, 1958, an election was held and the proposition to create the water district with the boundaries as revised, defined, and established by the County Commissioners of Yellowstone County carried by a vote of 414 to 155. On August 27, 1958, the Commissioners made an order declaring the Water District organized.

On August 29, 1958, the Secretary of State of Montana issued the certificate of incorporation to the Water District.

On November 26, 1958, defendants Doe, Dunbar, Griffing, Hadley, and Rehard were elected directors of the Water District; and on December 22, 1958, the County Commissioners appointed defendant Hansen a director of the Water District.

On June 8, 1960, the District delivered to the Yellowstone County Commissioners an estimate of the amount of money re-

quired for the coming year for payment of expenses and claims against the District.

On July 15, 1960, by a vote of 671 in favor to 70 opposed, the question carried to incur a bonded indebtedness of $2,000,-000 to construct a water supply and distribution system to serve all land within the Water District.

On July 18, 1960, the Commissioners adopted a resolution of intention to levy upon all land in the District on an area basis a "water tax" to pay the expenses and claims against the District submitted on June 8, 1960. A hearing was set for August 15, 1960, and notice of this assessment hearing was given in accordance with the provisions of section 16-4527, R.C.M.1947, which had been amended on March 13, 1959, after the inception of the District in question.

On August 15, 1960, the aforementioned assessment hearing was conducted by the Commissioners, at which hearing the appellants appeared personally or by counsel to lodge protests.

On August 18, 1960, the Commissioners adopted a resolution overruling the protests and levied the water tax pursuant to the provisions of the Act.

At this juncture the plaintiffs by their amended complaint sought to restrain collection of the water tax and to enjoin any and all further acts and proceedings pertaining to the Water District.

The district court sitting without a jury heard the cause and in addition to its findings as hereinbefore summarized made several other relevant findings. First, the estimated cost of the water system is $1,450,000, and the total estimated assessment per acre of land within the District is $334.75; second, the increase in the value of the land as a result of the creation of the District will exceed the amount of the assessment per acre; and third, the water tax levied by the Commissioners is commensurate with the benefits received by each and every parcel of land within the District.

Based upon its findings of fact and conclusions of law, judgment was entered for the defendants.

Appellants' three specifications of error attack the findings of fact and conclusions of law of the district court, and are keyed to the constitutionality of the County Water District Act and the procedure thereunder.

Appellants contend the Act is unconstitutional because (1) there is an unlawful delegation of legislative power and failure to set forth adequate standards, guides, and limitations, and, (2) the title to the Act is defective. Appellants also complain that they were deprived of due process because no adequate notice was given of the hearing to create the District. Finally, appellants contend that the manner of assessing the property on an area basis is unconstitutional.

██ Before inquiring into the merits of these contentions, we would reiterate certain fundamental principles which prevail when the constitutionality of legislative enactments is assailed. In School District No. 12 v. Pondera Co., 89 Mont. 342, 349, 297 P. 498, 501 (1931), we said, "If a statute is capable of two constructions, one of which will condemn it as unconstitutional while the other will preserve it, it is the duty of this court to give to the statute that construction which will vitalize it." To the same effect in Henderson v. City of Missoula, 106 Mont. 596, 599, 79 P.2d 547, 548, 116 A.L.R. 1425 (1938), this court quoting from State ex rel. Tipton v. Erickson, 93 Mont. 466, 19 P.2d 227, stated: " 'In the determination of the question of the constitutionality of any act, a statute, if possible, will be construed so as to render it valid. * * * It is presumed to be constitutional, and all doubts will be resolved in favor of its validity if it is possible to do so. * * * The invalidity of a statute must be shown beyond a reasonable doubt before the court will declare it unconstitutional. * * * And a statute will not be held unconstitutional unless its violation of the fundamental law is clear and palpable.' "

Bearing in mind the foregoing fundamental constitutional

doctrine, we turn to the issues raised by appellants' contentions.

Appellants first contend that the legislation in question is unconstitutional because it delegates to a corporation the power to tax for the general health, safety, and welfare of property owners without regard to benefits to the property so taxed.

Section 16-4527, provides that the land benefited by the creation of the water district shall bear the cost through the imposition of a " 'county water district bond tax; and until all other expenses or claims are fully paid, levy upon all of the lands of the district and [the board of commissioners must annually] cause to be collected a tax sufficient for the payment thereof to be known as the '———— county water district water tax.' " This poses the question: Are the foregoing taxes special assessments, or are they general taxes?

Relevant at this point is Toole County Irr. Dist. v. State, 104 Mont. 420, 434, 67 P.2d 989, 992 (1937), where, in connection with irrigation districts, this court said:

"Irrigation assessments are not taxes within the meaning of this constitutional and statutory exemption. Buffalo Rapids Irr. Dist. v. Colleran, 85 Mont. 466, 279 P. 369, 372; see, also, City of Kalispell v. School District, 45 Mont. 221, 122 P. 742, 744, Ann.Cas.1913D, 1101. In the former case it was held: 'An irrigation district is neither supported by appropriation of public funds, by taxation, or by private donation. True, funds for the maintenance and operation of the district are raised by assessments levied against the property within the district, but these levies are in the nature of special assessments for local improvements * * * entirely distinct from general taxes for state, county, school district, and municipal purposes; * * * they may even be levied against public property in spite of the constitutional exemption, * * * and no part of the revenue derived therefrom reaches the coffers of the state or its political subdivisions organized for governmental purposes.' (Citing cases.)"

Merely referring to the charges to be made under section 16-4527, supra, as "taxes" does not determine their true nature. In Vail v. Custer County, 132 Mont. 205, 217, 315 P.2d 993, 1000 (1957), this court stated:

"A tax is levied for the general public good. It creates a lien. An assessment is imposed against specific property to defray the cost of a specific benefit to that property, the benefit to be commensurate with the assessment." To like effect, citing Hamilton on the Law of Special Assessments, sections 233-241, this court said in Stettheimer v. City of Butte, 62 Mont. 297, 300, 204 P. 1039, 1040 (1922):

"The only basis upon which special assessments for local improvements are sustained is that the particular property charged derives a special benefit substantially commensurate with the burden imposed upon it, and it follows that, if a particular piece of property cannot be benefited by an improvement, it cannot be made to bear any part of the cost."

Are the benefits commensurate with the amounts assessed in the instant case? Appellants think not and set forth several reasons in this regard. First, they note the testimony of 43 owners in the District to the effect that creating the District would cure a health problem, but there would be no special benefits nor enhancement to the value of their property. Apparently the overwhelming majority of owners in the District think otherwise because 414 against 155 voted to create the district and 671 against 70 voted to incur a $2,000,000 bonded indebtedness to construct the system. To be sure, a health problem will be cured; but, cannot this result in special benefits to the land within the District? We think it can. The record is replete with affirmative evidence elicited from appraisers and owners indicating that the lands within the District would be specially benefited and their value enhanced. The trial court so found and we cannot say there is not substantial evidence in the record to support this conclusion.

Next appellants urge that all the land within the Dis-

trict is not specially benefited because, at the outset, the water lines will not serve various lands which have not yet been subdivided with streets or alleys dedicated. In support of this contention appellants cite Crutchfield v. Nash, 84 Mont. 556, 569, 276 P. 938, 943 (1929), wherein this court stated:

"An assessment cannot be predicated upon future action of the public authorities or future legislation, and hence, if property cannot be benefited by a proposed improvement, unless subsequent work is done for which no provision is made, the property cannot be specially assessed. The reason for this rule is plain; no matter how good the intention of the authorities may be to extend the system proposed by the creation of additional districts, at the time, or at a future time, their action must depend upon the sanction of the people interested, and this sanction may be withheld. [Citing authority.]"

In the instant case the evidence shows that provision has been made for subsequent work, which work does not depend upon the sanction of the people. To support this conclusion we need only note that the inhabitants of the District voted to incur a $2,000,000 bonded indebtedness for a system costing $1,-450,000.00; also, the evidence shows that an added $200,000 plus will be available because of a reduced interest rate. It would seem then that adequate plans have been made to serve all of the lands within the District, and to take advantage of the water system the dissident landowners need only dedicate streets and alleys.

Appellants next assail the constitutionality of the Act on the ground that there is an invalid delegation of power by the legislature because inadequate standards are provided in the County Water District Act.

Specifically, appellants stress the inadequacy of the sections of the Act dealing with revenues, because they purportedly do not limit indebtedness or obligations. The question of delegation of legislative power has been hitherto considered by this court in City of Missoula v. Missoula County, 139 Mont. 256,

362 P.2d 539 (1961), which quotes from Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056, (1960) as follows:

" 'The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid. In other words, in order to avoid the pure delegation of legislative power by the creation of an administrative agency, the legislature must set limits on such agency's power and enjoin on it a certain course of procedure and rules of decision in the performance of its function; and, if the legislature *fails to prescribe with a reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad,* its attempt to delegate is a nullity.

" ' * * * On the other hand, a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency and *its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations.'* (Emphasis supplied.) 73 C.J.S. Public Administrative Bodies and Procedure, § 29, pp. 324, 325.''

With respect to indebtedness and obligations, a county water district incorporated under the provisions of section 16-4514, R.C.M.1947, shall broadly have the power to borrow money, levy taxes, and make contracts. Without quoting the entire Act, we observe that subsequent provisions provide standards and guides with regard to revenues. For example, the power to levy taxes is carefully detailed in sections 16-4527 through 16-4528; the power to make contracts is to be exercised by the Board of Directors in the manner prescribed by section 16-4516; sections 16-4517 through 16-4522, set forth guides concerning

the power to incur bonded indebtedness, whereby such a proposition is submitted to the electors after due notice; the power to fix water rates to pay operating expenses is detailed in sections 16-4526 through 16-4527; finally, the electors are protected from arbitrary action on the part of officials by virtue of recall, initiative, and referendum.

Accordingly, we hold that the provisions of the County Water District Act are sufficiently clear, definite, and certain to enable the County Water District to know its rights and obligations.

Appellants next attack the constitutionality of the Act on the ground that its title is defective. Art. V, § 23, Mont.Const. provides:

"No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The title to the County Water District Act is as follows:

"An Act to Provide for the Incorporation and Organization and Management of County Water Districts; to Provide for the Acquisition of Water Rights or Construction Thereby of Waterworks; and for the Acquisition of All Property Necessary Therefor; and Also to Provide for the Distribution and Sale of Water by Said Districts; Providing for Severability and An Effective Date." Chapter 242, Laws of 1957.

Appellants claim that the provisions of the Act for the levy and collection of taxes, decreeing such taxes a lien, authorizing a bonded indebtedness, and provisions for initiative, referendum, adding to the District, and exclusion of territory are not expressed in the above-quoted title and are therefore void.

The claim of invalidity of title has been presented to this court numerous times in the past. State v. McKinney, 29 Mont. 375, 380, 74 P. 1095, 1096 (1904), is noteworthy in this respect,

and we deem the following rules enunciated in the McKinney case applicable to the case at bar. This court stated:

"For a clear understanding of the question under consideration, it seems important to announce a few general legal principles, viz.:

"First. The purposes of this constitutional provision are to prevent the legislature from the enactment of laws surreptitiously; to prevent 'logrolling' legislation; to give to the people general notice of the character of proposed legislation, so they may not be misled; to give all interested an opportunity to appear before committees of the legislature and be heard upon the advisability of the proposed legislation; to advise members of the legislature of the character of the proposed legislation, and give each an opportunity to intelligently watch the course of the proposed Bill; to guard against fraud in legislation, and against false and deceptive titles. These purposes have been so plainly announced by this court in numerous opinions that a statement of the rule and a citation of cases would seem sufficient. [Citing cases.]

"Second. While all the provisions of the constitution are 'mandatory and prohibitory' (Art. III, Sec. 29), yet the courts, bearing in mind that the legislature is a co-ordinate branch of the government, and that its action, if fair, should be sustained, have given this section of the constitution a liberal construction, so as to not interfere with or impede proper legislative functions. [Citing cases.]

"Third. The legislature is the judge, to a great extent, at least, of the title which it will prefix to a Bill; and the court has no right to hold a title void because, in its opinion, a better one might have been used. [Citing cases.]

"Fourth. The title is generally sufficient if the body of the act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the Bill, as mentioned in the title. Details need not

be mentioned. The title need not contain a complete list of all matters covered by the Act. [Citing cases.]

"Fifth. If the court, after an application of all these principles, is still in doubt as to the constitutionality of the Bill, it should sustain the Act. [Citing cases.]"

Applying the foregoing principles to the instant case, can we hold that the County Water District Act is invalid because the title does not refer to the Water Tax, Bond Tax( Initiative, Referendum, and the Procedure for Adding Land To or Excluding Land From the District? The title to the Act provides for the construction of waterworks. Certainly a means of financing such an undertaking must have been contemplated by the legislature; hence, we hold that the provisions in the body of the Act for Water Tax and Bond Tax are germane to that part of the title dealing with construction of waterworks and such taxes are necessary to accomplish the general objects of the Bill.

■ The provisions for initiative, referendum, and the procedure for adding to and excluding from the District are germane to that portion of the title dealing with the management of the District. We think that one who reads the title to the Act in question would be reasonably advised of the contents of the bill; therefore, we hold that the title is not defective so as to render the Act invalid.

■ Appellants next complain that they were deprived of due process because adequate notice was not given of the hearing to create the District. Under the provisions of section 16-4503, the petition for a County Water District must be published for ten consecutive days in a daily newspaper or in two issues of a weekly newspaper printed and published in such county, together with a notice stating the time of the meeting at which same will be presented. This requirement was met in the instant case and after a hearing on the petition, the boundaries of the District were set. Appellants admit that such action is not a taking of property, however, they assert there is a constitutional violation of due process, because appellants without

notice were foreclosed from challenging the petition, notice and establishment of boundaries.

Appellants cite no authority to support their position. Indeed, the authority seems to be to the contrary. Recognizing the fundamental constitutional rule that no person shall be deprived of property without due process of law, we need only observe that the hearing at which the boundaries of an improvement district are established does not constitute a taking of property. On the subject of hearing, the United States Supreme Court has said: "There is no constitutional privilege to be heard in opposition at the launching of a project which may end in an assessment. It is enough that a hearing is permitted before the imposition of the assessment as a charge upon the land [Citing cases.] or in proceedings for collection afterwards. [Citing cases.]" Utley v. City of St. Petersburg, 292 U.S. 106, 54 S.Ct. 593, 595, 78 L.Ed. 1155 (1934). The foregoing rule is applicable in the instant case, thus disposing of appellants' contention concerning lack of due process at the hearing to establish the district.

It should be noted that the Utley case, supra, requires a hearing be permitted before the imposition of the assessment. In this regard, section 16-4527, provides, prior to the levy of any tax or assessment, the Board of County Commissioners must give notice of its intention to levy and collect by (1) posting notice in five public places within the boundaries of the lands upon which the tax is to be levied; (2) by publishing notice for ten consecutive days in a daily newspaper or in two issues of a weekly newspaper published in the county wherein the District is located; and (3) by forwarding by registered mail, at least ten days prior to the hearing on the assessment, a copy of the notice to the owners of taxable real property within the district.

Clearly, the foregoing notice requirements afford due process in the levy of assessments. However, appellants point out that these provisions were not added to the County Water District

Act until March 1959, whereas the Water District was incorporated in August 1958, when no such provisions providing for due process in notice of assessments existed. We need only point out that assessments were not levied until 1960, at which time the notice provisions were adequate. Appellants contend such a result would make the added notice provisions retroactive or retrospective and cite 50 Am.Jur., Statutes, § 482, p. 505, as follows: ''A retrospective law, in a legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past.''

As stated previously, the mere fact that appellants' land was included in the improvement district is not a taking of property. The owners' rights are not affected until the property is taken or damaged, or there is an assessment of benefits against it. See Beck v. Missouri Valley Drainage District, 46 F.2d 632 (8th Cir. 1931), cert. denied 284 U.S. 618. In the instant case the appellants' rights in their land were not affected until the levy of assessment in August 1960, at which time the provisions of the Act were such as to afford them due process.

Finally, appellants contend that the manner of assessing the property on an area basis is unconstitutional. Applicable is R.C.M.1947, § 16-4527, which provides in part:

''* * * each lot or parcel of land to be assessed shall be assessed with that part of the amount of money required which its area bears to the total area of all the lands to be assessed; or said assessment may, at the option of the board of county commissioners, be based upon the taxable valuation, as stated in the last completed county assessment roll, of the lots or parcels of land, exclusive of improvements thereon, within said district, in which case, each lot or parcel of land to be assessed shall be assessed with that part of the amount of money required

which its taxable valuation bears to the total taxable valuation of all of the lands to be assessed."

To support their argument that the water tax is grossly disproportionate appellants cite 48 Am.Jur., Special or Local Assessments, § 65, p. 620, which recognizes the general rule that a special or local improvement may be apportioned according to area although the lots or parcels are of different value, but further states: "If, however, the improvement is of such character that there is no reasonable presumption that substantial justice generally will be done by an assessment according to area, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the assessment cannot stand against the complaint of one of them.

"Differences in an assessment according to area which are not based upon any consideration of differences in benefit received, but are established mechanically, although in obedience to criteria provided by statute or municipal charter, which differences result in arbitrary discrimination violate the Fourteenth Amendment to the Constitution."

The foregoing qualification to the general rule that assessments may be apportioned according to area depends upon whether or not the assessment is disproportionate to the benefits received. The evidence shows that the property assessed in the Water District will be enhanced to the extent of the burden imposed, therefore we cannot hold that the method of assessment provided for in the County Water District Act is violative of the Fourteenth Amendment to the constitution.

The judgment is affirmed.

MR. JUSTICES ADAIR, DOYLE, CASTLES and JOHN C. HARRISON, concur.