## STATE, Respondent, v. ROSS, Appellant.

### (No. 2,605.)

(Submitted December 23, 1908. Decided February 15, 1909.)

[99 Pac. 1056.]

*Criminal Law —Gaming — Statute — Constitutionality—Title— Unity of Subject—Penalties—Civil Action for Money Lost— Information—Sufficiency.*

Statutes—Title—Validity.
1. That the title of an Act recites the purpose of the legislation at a greater length than necessary is not a valid objection to either the title or the Act.

Same—Single Object—How Determined—Surplusage.
2. The question whether a particular Act has but a single object or purpose in view must be determined, not from the title, but from the body of the Act itself; and, if it has but one, the legislation is not invalid on the ground of plurality of subjects even though the title recites more than one; the subject not contained in the Act being treated as surplusage.

Gaming—Statute—Constitutionality.
3. *Held,* that the Act of 1907 prohibiting certain forms of gambling (Laws 1907, p. 287 [secs. 8416-8436, Revised Codes]) is not open to the constitutional objection (Article V, sec. 23) that it contains more than one subject.

Same—Penalties—Civil Action for Money Lost—Validity of Statute.
4. The anti-gambling law (Laws 1907, p. 287 [Revised Codes, secs. 8416-8436]) was not rendered invalid by the insertion of section 15 (sec. 8430, Revised Codes), creating a right of action in favor of one losing at any of the prohibited games, to recover the amount lost together with exemplary damages. The right thus given is in the nature of a penalty and constitutes a part of the penalty provided by the Act. The only limit placed by the Constitution upon the legislature in fixing punishments for crimes is that no excessive fines be imposed or cruel and unusual punishments inflicted.

Same—Information—Sufficiency.
5. An information charging a violation of the anti-gambling law in the words of the statute (sec. 1, Act of 1907, p. 287 [sec. 8416, Revised Codes]) viz.: that defendant willfully, etc., "did open, carry on * * * a certain game of stud-horse poker for money," etc., was sufficient, and it was not necessary to describe the game in detail or set out the means by which it was carried on.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

John Ross was convicted of a violation of the anti-gambling law, and appeals. Affirmed.

*Mr. Jesse B. Roote,* for Appellant.

The information does not charge that the game was played for money, checks and credits, but that the appellant conducted it for moneys, checks and credits. It may be that those who were engaged in the game were playing for amusement, and paid the appellant a fixed sum, in no way dependent upon the result of the game, for conducting it. This might be within the allegations of the information, but it would not be a public offense or within the statute. (*People* v. *Carroll,* 80 Cal. 153, 22 Pac. 129; *Dreyfus* v. *State,* 83 Ala. 54, 3 South. 430; *State* v. *Stillwell,* 16 Kan. 24; *Meyers* v. *State,* 41 Tex. Cr. 508, 55 S. W. 818; *Rawls* v. *State,* 70 Miss. 739, 12 South. 584; *Cothran* v. *State,* 36 Tex. Cr. 196, 36 S. W. 273.)

The Act in question violates section 23, Article V, of the Constitution, providing that no law shall be passed containing more than one subject, which shall be clearly expressed in its title. (*People* v. *Denahy,* 20 Mich. 349; *Skinner* v. *Wilhelm,* 63 Mich. 568, 30 N. W. 311; *State* v. *Ferguson,* 104 La. 249, 81 Am. St. Rep. 123, 28 South. 917; *Builders' etc. Supply Co.* v. *Lucas,* 119 Ala. 202, 24 South. 416; *State* v. *Wright,* 14 Or. 365, 12 Pac. 708; *City of Grand Rapids* v. *Burlingame,* 93 Mich. 469, 53 N. W. 620; *Oxnard etc. Sugar Co.* v. *State,* 73 Neb. 57, 102 N. W. 80, 105 N. W. 716; *Equitable etc. Co.* v. *Donahoe,* 3 Penne. 191, 49 Atl. 372; *Christie* v. *Miller,* 128 Ga. 412, 57 S. E. 697.) Furthermore, a criminal statute cannot contain provisions of a civil nature. (*State* v. *Tieman,* 32 Wash. 294, 98 Am. St. Rep. 854, 73 Pac. 375.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

The gravamen of the information is that defendant did open, carry on, operate, run and conduct a game of stud-horse poker for gain. (*State* v. *Wilson,* 9 Wash. 16, 36 Pac. 967; *State* v. *Preston* (Wash.), 95 Pac. 82.) The manner of doing this, whether by playing or otherwise, or by use of cards or other device, is wholly immaterial so far as the pleading is concerned,

for it is positively prohibited in any and all forms. Such matters may be material as evidence, but not as pleading. Charging a statutory offense in the language of the statute is sufficient. (*State* v. *Swan*, 31 Utah, 336, 88 Pac. 12; *State* v. *Stickney*, 29 Mont. 523, 75 Pac. 201; *State* v. *Carr*, 6 Or. 133.) The game charged to have been conducted is given a specific name, and the use of that name is a sufficient description. (*State* v. *Wilson*, 19 Wash. 16, 36 Pac. 967; see, also, *Bobel* v. *People*, 173 Ill. 19, 64 Am. St. Rep. 64, 50 N. E. 322; *State* v. *Carr*, 6 Or. 133.) The Act is not open to the constitutional objection made by appellant. (*State* v. *McKinney*, 29 Mont. 375, 74 Pac. 1095; *City of Crookston* v. *County Commissioners*, 79 Minn. 283, 79 Am. St. Rep. 453, and note, 82 N. W. 586; *Bobel* v. *People*, *supra*, and note.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

An information was filed in the district court of Yellowstone county charging that the defendant, John Ross, "willfully, wrongfully, and unlawfully did open, carry on, operate, run, and conduct a certain game of stud-horse poker for money, checks, and credits with certain persons whose names are to this informant unknown," etc. The defendant, having been convicted, appeals from the judgment. It is claimed by the appellant that the statute under which the prosecution was had (Laws 1907, Chapter 115, p. 287) is unconstitutional, and that the information does not state a public offense in any event.

1. It is said that this Act contains more than one subject; that the title of the Act fairly expresses the purposes of the Act, which are: "First, to prohibit certain games and the possession and use of certain implements and appliances and the using or leasing of any premises for gambling purposes, and to provide for the enforcement of the Act; second, to provide civil and criminal liabilities and penalties for violations of its provisions; third, to provide for civil actions for the recovery of money lost at any of the games prohibited by the

Act; and, fourth, to repeal and prohibit city and town ordinances on the subject''—and is violative of section 23, Article V, of the Constitution of Montana, which provides: ''No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title. * * * ''

It is perfectly clear from the title of the Act, and from the body of the Act itself, that the purpose to be accomplished by the legislation is to prohibit certain forms of gambling and to punish everyone who engages, directly or indirectly, in any of the prohibited games, whether as a player, a person betting on the side, the owner or person in charge of the place where the prohibited games are conducted or where the paraphernalia are kept, or any person who solicits another to visit a place where any such gambling is conducted or represented to be conducted. The title of the Act might have been abbreviated, but the fact that it recites the purposes at greater length than necessary is not a valid objection to it or to the Act. In *Evers* v. *Hudson,* 36 Mont. 135, 92 Pac. 462, this court, in considering a like objection to a statute, said: ''The object of the constitutional provision now under consideration is not to embarrass honest legislation, but to prevent the vicious practice, which prevailed in states which did not have such inhibitions, of joining in one Act incongruous and unrelated matters. The rule of interpretation now quite generally adopted is that, if all parts of the statute have a natural connection and can reasonably be said to relate, directly or indirectly, to one general and legitimate subject of legislation, the Act is not open to the charge that it violates this constitutional provision; and this is true no matter how extensively or minutely it deals with the details looking to the accomplishment of the main legislative purpose. (26 Am. & Eng. Ency. of Law, 2d ed., 575.) Or, stating the converse of the proposition, it may be said that if, after giving the Act the benefit of all reasonable doubts, it is apparent that two or more independent and incongruous subjects are embraced in its provisions, the Act will be held to transgress the constitu-

tional provision, and to be void by reason thereof." The title of an Act may be as comprehensive as the legislative judgment dictates, provided only that it looks to but a single purpose or object, and the Act may include every matter germane to, and in furtherance of, that purpose or object.

The provision of our Constitution quoted above is one found in the Constitution of nearly every state, and it has come to be treated by courts and text-writers generally as referring to "unity of subject." In speaking of this provision the writer of the text in 26 American and English Encyclopedia of Law, 575, says: "In fact, however, the question of 'unity of subject' must be determined, not from the title, but from an inspection of the body of the Act, and if that be found to embrace but one subject, the fact that the title expresses more than one does not render the Act objectionable on the ground of plurality; the subject not contained in the Act being treated as surplusage."

We think that a careful perusal of this Act will disclose that it has but a single purpose, viz., to prohibit certain forms of gambling. In providing penalties the Act is very sweeping in its provisions, but reference to the penalty clauses need not have been included in the title at all, and the omission would not have vitiated the Act. (*State* v. *Bernheim,* 19 Mont. 512, 49 Pac. 441; 26 Am. & Eng. Ency. of Law, 588.)

In addition to the penalties, strictly so called, this Act provides that a person losing at any of the prohibited games may maintain a civil action to recover the amount lost, together with exemplary damages, which in no case shall be less than $50 nor more than $500. But it is contended that a criminal statute cannot contain a provision for a civil remedy, and *State* v. *Tieman,* 32 Wash. 294, 98 Am. St. Rep. 854, 73 Pac. 375, is referred to in support of this contention; but the case is not authority for the proposition in support of which it is cited. The statute of Washington under consideration provided for proceedings in bastardy, which the court held to be civil proceedings, and since the statute was a part of an Act entitled "An Act relative to crimes and punishments and proceedings in criminal cases," it was held that the bastardy statute was not

comprehended in the title. We do not know of any provision of the Constitution which limits the legislature in fixing pun-ishments for crimes, except that which forbids that excessive fines be imposed or cruel or unusual punishments inflicted.

Section 15 of this Act creates a right of action in favor of one losing at any of the prohibited games. The obvious purpose of this section is to rob gambling of its fascination by depriv-ing the winner of the fruits of his wager, but the section does not stop there. The winner is not only liable to lose his win-nings, but is equally liable to be mulcted in damages from $50 to $500; and the winner is not the only one who is made liable, but "all persons having any interest, direct or contingent, in such game as backers, owners or otherwise," are equally liable with the winner. In other words, the right of action given by section 15 is in the nature of a penalty, and in fact constitutes a part of the penalty provided by the Act. In 1876 the state of Oregon adopted a statute very similar to our chapter 115, above. Section 3 of that Act (Laws 1876, p. 40) gives to the loser a right of action to recover double the amount lost. (Hill's Ann. Laws Or. 1892, c. 45, secs. 3526-3536.) In *Meyers* v. *Dillon,* 39 Or. 584, 66 Pac. 814, the court, speaking of this provision, said: "Again, it is insisted that the court erred in stating to the jury the general provisions of the Act of 1876 defining unlawful gaming, and the penalties for a viola-tion thereof. The section of the statute under which the present action was instituted (Hill's Ann. Laws Or., sec. 3528) is a part of the Act referred to, and is intelligible only by reference to the other provisions. It particularly refers to the unlawful gaming defined and punished by other sections, and is, in effect, one of the penalties for the violation of the Act. It creates a cause of action in favor of the loser of money at certain gam-bling games against the dealer or player winning the same, or the proprietor of such game, to recover double the amount lost."

Section 5209, Revised Statutes of Missouri, 1889, provides: "Any person who shall lose any money or property at any game or gambling device, may recover the same by civil ac-tion." In considering this statute the court, in *Cofer* v. *Rise-*

*ling,* 153 Mo. 633, 55 S. W. 235, said: "As was well said in *Howell* v. *Stewart,* 54 Mo. 406, quoting from Lord Mansfield in reference to lottery statutes: 'The statute itself  \*  \*  \*  has marked the criminal.' This statute was intended as an aid to the criminal statute. It is leveled against the winner. The criminal statutes deal criminally with the loser. The statute was intended to prevent gambling by taking away the fruits of the wager from the winner. The right is therefore purely statutory. The statute is an exercise of the police power of the state and as such is constitutional. The rights and the remedies must be found in the statute itself." We do not think that the objections urged against the statute are valid.

2. Against the sufficiency of the information it is urged that "the information does not charge that the game was played for money, checks, and credits, but that the appellant conducted it for money, checks, and credits." In so far as applicable here, section 1 of Chapter 115, above, reads as follows: "Any person who  \*  \*  \*  conducts  \*  \*  \*  any game of  \*  \*  \*  stud-horse poker  \*  \*  \*  for money, checks, credits or any representative of value  \*  \*  \*  is punishable by a fine not less than one hundred nor more than one thousand dollars, and may be imprisoned," etc. While the language of section 1 is somewhat involved, we think, that, in so far as applicable here, it is properly paraphrased above. The information follows the language of the statute, and in this instance is sufficient. The statute in terms prohibits anyone from conducting the game of stud-horse poker for money, checks, credits, or any representative of value. In 20 Cyc. 903, the general rule applicable to a case of this character is stated as follows: "Where the playing of a game is in express terms prohibited by the statute, the general rule is that a statement of the name of such prohibited game in the indictment is sufficient, and that it is not necessary to give any description of the game in detail or the means by which the same is played"—and many cases are cited in support of the text. With this rule we agree.

It was not necessary for this Act to provide for a repeal of city and town ordinances. It would have that effect in any event.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

(Submitted December 23, 1908.   Decided February 15, 1909.]