FILED

11/04/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0501

DA 24-0501

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 249

NETZER, KRAUTTER & BROWN, P.C.
and DONALD L. NETZER,

        Plaintiffs, Appellants,
        and Cross-Appellees,

    v.

STATE OF MONTANA, by and through
AUSTIN KNUDSEN, in his official capacity
as Attorney General and LAURIE ESAU,
Montana Commissioner of Labor and Industry,

        Defendants, Appellees,
        and Cross-Appellants.

APPEAL FROM:    District Court of the Seventh Judicial District,
                In and For the County of Richland, Cause No. DV-21-89
                Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Jared R Wigginton, Good Steward Legal, PLLC, Henderson, Nevada

                Joel G. Krautter, Netzer, Krautter & Brown, P.C. Billings, Montana

        For Appellees:

                Austin Knudsen, Montana Attorney General, Michael Russell, Thane Johnson, Alwyn Lansing, Michael Noonan, Assistant Attorneys General, Helena, Montana

                        Submitted on Briefs:  August 20, 2025
                                  Decided:  November 4, 2025

Filed:

                _____
                              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Appellants—Netzer, Krautter & Brown, P.C. and Donald L. Netzer (collectively "Netzer")—challenge House Bill (HB) 702, Section 49-2-312, MCA (2021 Mont. Laws ch. 418), a 2021 law barring discrimination based on an individual's vaccination status. Netzer appeals the orders upholding the Bill's constitutionality, and the State cross-appeals the District Court's ruling invalidating one provision of HB 702. The issues on appeal are:

1. *Whether the District Court erred by using this Court's preliminary injunction decision to bar the Appellants from litigating their constitutional claims on the merits on remand.*

2. *Whether the District Court erred in concluding that § 49-2-312(1), MCA, complies with and § 49-2-312(4), MCA, violates the single-subject and clear-title requirements of Article V, § 11(3), of the Montana Constitution.*

We affirm the rulings that Netzer challenges and reverse on the State's cross-appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 During the 67th Regular Session in 2021, the Montana Legislature passed and the Governor signed HB 702, bearing the title, "An Act Prohibiting Discrimination Based on a Person's Vaccination Status or Possession of an Immunity Passport; Providing an Exception and an Exemption; Providing an Appropriation; and Providing Effective Dates." Section 49-2-312, MCA (2021 Mont. Laws ch. 418). The law prohibits persons, including businesses, governmental entities, employers, and public accommodations, from treating individuals adversely based on their vaccination status or possession of an immunity passport. Section 49-2-312(1), MCA. It exempts schools and daycare facilities and

2

provides an exemption for healthcare facilities that comply with certain requirements. Section 49-2-312(2), (3)(b), MCA. The law permits a person, governmental entity, or employer to "recommend that an employee receive a vaccine." Section 49-2-312(3)(a), MCA. It defines "vaccination status" as an "indication of whether a person has received one or more doses of a vaccine." Section 49-2-312(5)(b), MCA. "Immunity passport" is a type of record "indicating that a person is immune to a disease, either through vaccination or infection and recovery." Section 49-2-312(5)(a), MCA. Finally, the law affirmatively prohibits requiring a person to obtain a vaccine authorized for emergency use or undergoing safety trials. Section 49-2-312(4), MCA. Although HB 702 arose during the COVID-19 pandemic, the law applies to all vaccines and immunity statuses.

¶3 On October 26, 2021, Netzer filed an amended complaint in Montana's Seventh Judicial District alleging that HB 702 violated several provisions of the Montana Constitution.[1] Netzer claimed that the law violated Montanans' inalienable rights, (Mont. Const. art. II, § 3); the State's and its citizens' duties to "maintain a clean and healthful environment," (Mont. Const. art. IX, § 1); the right to equal protection, (Mont. Const. art. II, § 4); the unenumerated rights retained by the people, (Mont. Const. art. II, § 34); and the clear expression of a bill's subject, (Mont. Const. art. V, § 11(3)). Netzer sought declaratory relief on the constitutionality of HB 702 as well preliminary and permanent injunctions prohibiting the State from enforcing the Bill in its entirety.

---

[1] The Appellants have since amended their party name to reflect the name change of Netzer Law Office, P.C. to Netzer, Krautter & Brown, P.C..

3

¶4 The State moved to dismiss under M. R. Civ. P. 12(b)(6) and opposed Netzer's request for a preliminary injunction. Netzer cross-moved for summary judgment under M. R. Civ. P. 56, stating that there were "no material facts in dispute, leaving only questions of law." The District Court denied Netzer's request for a preliminary injunction on February 1, 2022. The court declined to address Netzer's claim under Article V, Section 11(3), of the Montana Constitution, concluding that its analysis would be "redundant" because HB 702 was not codified under its disputed title.

¶5 Netzer appealed the District Court's order denying their application for a preliminary injunction. In *Netzer L. Off., P.C. v. State*, 2022 MT 234, 410 Mont. 513, 520 P.3d 335 (*Netzer I*), we held that the District Court did not abuse its discretion in denying preliminary relief and remanded for a merits determination. *Netzer I*, ¶¶ 36-37. We instructed the court further on remand to "evaluate HB 702 under Article V, Section 11(3) of the Montana Constitution, as it consider[ed] the merits of Netzer's other claims." *Netzer I*, ¶¶ 13, 36-37.

¶6 Netzer moved to set a hearing on the State's motion to dismiss and moved separately to partially withdraw their motion for summary judgment. Netzer asserted that they needed more time to develop the evidentiary record on all claims except for their claim under Article V, Section 11(3), of the Montana Constitution. On November 22, 2023, the District Court dismissed most of Netzer's constitutional claims.

¶7 Netzer filed a motion under M. R. Civ. P. 59(e) to alter or amend the District Court's order granting partial dismissal. After full briefing, the District Court issued a

supplemental order, "affirm[ing] its previous rulings" and providing "judicial clarity." Following the order granting partial dismissal and the supplemental order, the only claim remaining was that HB 702 violated Article V, Section 11(3), of the Montana Constitution.

¶8 The State filed an answer addressing Netzer's remaining claim and moved under M. R. Civ. P. 12(c) for judgment on the pleadings. In response, Netzer requested that the District Court treat the State's motion as a "competing motion for summary judgment," as the briefs contained numerous references beyond the scope of their first amended complaint. At the hearing on the State's motion, the parties stipulated that the oral argument and briefs served as an equivalent to Netzer's motion for summary judgment on the issue.

¶9 On June 24, 2024, the District Court issued an order addressing HB 702's title. The District Court held that Subsection (1) of HB 702 did not violate Article V, Section 11(3), of the Montana Constitution, but Subsection (4) did. The District Court reasoned that Subsection (1) prohibited entities from discriminating against individuals based on their vaccination status and thus fell within the title's description. Netzer appeals that ruling. The District Court concluded, however, that Subsection (4)'s prohibition against requiring an individual to obtain emergency use authorization vaccines or vaccines still undergoing safety trials did not correlate with HB 702's antidiscrimination title. The District Court voided Subsection (4) of HB 702. The State appeals that ruling.

5

**STANDARDS OF REVIEW**

¶10     This Court reviews de novo a court's order of dismissal under M. R. Civ. P. 12(b)(6). *Flathead Props., L.L.C. v. Flathead Cnty.*, 2024 MT 323, ¶ 8, 420 Mont. 77, 561 P.3d 930. "[W]e construe a complaint in the light most favorable to the plaintiff." *Flathead*, ¶ 8 (citation omitted). Only when it "appears beyond a doubt [that] the plaintiff can prove no set of facts in support of his claim . . . [entitling] him to relief" may a district court dismiss a complaint for failure to state a claim. *Flathead*, ¶ 8.

¶11     We review a district court's ruling on M. R. Civ. P. 59(e) motions for an abuse of discretion. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 27, 304 Mont. 356, 22 P.3d 631. An abuse of discretion occurs when "the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Lee*, ¶ 27 (citation omitted).

¶12     This Court reviews summary judgment rulings de novo, "examining whether the decision correctly found that there were no genuine issues of fact and that the moving party was entitled to judgment as a matter of law." *Dick Anderson Constr., Inc v. Monroe Prop. Co., LLC*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. All reasonable inferences "must be drawn in favor of the party opposing summary judgment." *Dick Anderson*, ¶ 16.

¶13     Our review of "constitutional questions is plenary." *Williams v. Bd. of Cnty. Comm'rs of Missoula Cnty.*, 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88 (citation omitted). A statute's constitutionality is a question of law. *Williams*, ¶ 23. "Legislative

6

enactments are presumed to be constitutional, and the party challenging the provision bears the burden of proving beyond a reasonable doubt that it is unconstitutional." *Williams*, ¶ 23 (citations omitted). "[T]he interpretation and construction of a statute is a matter of law[,] and we review whether the district court interpreted and applied a statute correctly de novo." *State v. Triplett*, 2008 MT 360, ¶ 13, 346 Mont. 383, 195 P.3d 819 (citations omitted).

## DISCUSSION

¶14   *1. Whether the District Court erred by using this Court's preliminary injunction decision to bar the Appellants from litigating their constitutional claims on the merits on remand.*

¶15   A preliminary injunction "does not decide the merits of a claim . . . ; rather[, a court's decision] must remain focused on the limited purpose of a preliminary injunction—to preserve the status quo and minimize the harm pending final resolution." *Netzer I*, ¶ 15 (citation omitted, emphasis removed). In our review of a preliminary injunction, any view the Court expresses on the merits is "a consequence of the procedural posture of the case" and under its statutory duty to determine a party's "likelihood to succeed on the merits." Section 27-19-201, MCA; *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 19, 334 Mont. 86, 146 P.3d 714. A court's decision on a preliminary injunction "is not intended to express and does not express any opinion about the ultimate merits of the individual issues or of the case." *Benefis Healthcare*, ¶ 19.

¶16   After this Court reviews a district court's determination on a preliminary injunction, we may remand with instructions to "apply [our] ruling in further proceedings consistent

7

with [our] decision." M. R. App. P. 19(c). The district court then must fulfill its "duty. . . to comply with the mandate of [this Court] and to obey the directions therein." *Mont. Env't Info. Ctr. v. Mont. Dep't of Pub. Serv. Regul.*, 2024 MT 56, ¶ 64, 415 Mont. 499, 545 P.3d 69. A district court's refusal to do so is reversible error. *State ex rel. Olson v. Dist. Ct. of Nineteenth Jud. Dist.*, 184 Mont. 346, 349, 602 P.2d 1002, 1004 (1979).

¶17 This Court in *Netzer I* reviewed the District Court's denial of a preliminary injunction. *See generally* 2022 MT 234, 410 Mont. 513, 520 P.3d 335. Throughout our opinion, we reiterated that our review did not resolve the underlying merits of Netzer's claim. *Netzer I*, ¶¶ 9, 15, 26. Under the standard of review applicable to preliminary injunction rulings, we upheld the District Court's denial of Netzer's application for a preliminary injunction. Because the court had not considered the final claim, we remanded with instruction to "evaluate HB 702 under Article V, Section 11(3), of the Montana Constitution, *as it consider[ed] the merits* of Netzer's other claims." *Netzer I*, ¶¶ 13, 36 (emphasis added).

¶18 When the District Court partially granted the State's Rule 12(b)(6) motion to dismiss Netzer's claims, it cited *Netzer I* to "ba[r Netzer] from relitigating [their] claim" under Article II, Sections 3 and 4, and Article IX, Section 1, of the Montana Constitution. The District Court reasoned that *Netzer I* "upheld [its] findings" in the preliminary injunction phase of the case. It concluded, without addressing the merits of Netzer's claims, that HB 702 violated none of their fundamental constitutional rights. In response, Netzer's motion to alter or amend the order under M. R. Civ. P. 59(e) argued that the

8

District Court's denial of their preliminary injunction did not preclude their claims on the merits, noting this Court's express instruction to give such consideration.

¶19 A Rule 59(e) motion is, among other things, appropriately used to "correct manifest errors of law or fact upon which the judgment was based." *Nelson v. Driscoll*, 285 Mont. 355, 360, 948 P.2d 256, 259 (1997) (citation omitted). It may not be used to "raise arguments, which could, and should, have been made before [the] judgment is issued." *Nelson*, 285 Mont. at 361, 948 P.2d at 259 (quotation omitted). Motions to alter or amend "afford . . . relief in extraordinary circumstances." *Nelson*, 285 Mont. at 361, 948 P.2d at 259 (quotation omitted).

¶20 A party seeking relief under Rule 59(e) may request that a district court rectify its procedural error. Federal courts applying the similar Fed. R. Civ. P. 59(e) have held that if a district court subsequently corrects its initial procedural error, the deficiency is effectively cured. *See Luig v. N. Bay Ent., Inc.*, 817 F.3d 901, 905 (5th Cir. 2016); *Simmons v. Reliance Standard Life Ins. Co. of Texas*, 310 F.3d 865, 869 n. 4 (5th Cir. 2002); *Barney v. IRS*, 618 F.2d 1268, 1271 n. 8 (8th Cir. 1980). In other contexts, we have held that a district court's "post hoc compliance" with statutory requirements may "cur[e] [an] initial" procedural error. *In re D.C.S.*, 2025 MT 179, ¶¶ 15, 18, 25 423 Mont. 365, 573 P.3d 791 (holding plain error review unnecessary when the "procedural errors relat[ing] to [an] ex parte emergency order [were] moot" because its deficiencies were resolved through a subsequent hearing and amended permanent parenting plan). We come to a similar conclusion in this case.

9

¶21 A preliminary injunction provides a mechanism to afford interim relief and preserve the status quo during the pendency of litigation. *Stephenson v. Lone Peak Pres., LLC*, 2025 MT 148, ¶ 14, 423 Mont. 46, 571 P.3d 1042. Statute governs when a preliminary injunction may be granted. Section 27-19-201, MCA; M. R. Civ. P. 65. Claim preclusion "applies only if the judgment is rendered 'on the merits.'" *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 27, 366 Mont. 78, 285 P.3d 494.

¶22 Here, because a preliminary injunction does not render judgment "on the merits," the District Court improperly used this Court's opinion in *Netzer I* to preclude Netzer from "relitigating [their] claim." Its failure to address Netzer's claims on their merits was a procedurally erroneous treatment of *Netzer I* and a misapplication of our instructions on remand. The District Court's initial order partially dismissing Netzer's claims was a procedural error and a manifest error of law. Had the District Court stopped here, Netzer's claims would be appropriate. The District Court, however, subsequently corrected its error and issued a supplemental order providing "judicial clarity." Its supplemental order addressed Netzer's claims under Article II, Sections 3 and 4, and Article IX, Section 1, of the Montana Constitution on the merits. The District Court's supplemental order cured its initial error. The District Court therefore did not abuse its discretion by the manner in which it disposed of Netzer's claims.

¶23 Aside from contesting the procedural deficiency, the Appellants do not challenge the District Court's later conclusions partially dismissing their claims. Netzer fails to address the substance of the District Court's supplemental order or to develop an argument

10

with legal support for their position on the majority of their constitutional challenges. "[I]t is not this Court's job to conduct legal research on [a party's] behalf, to guess as to [a party's] precise position, or to develop legal analysis that may lend support to that position." *Griffith v. Butte Sch. Dist. No. 1,* 2010 MT 246, ¶ 42, 358 Mont. 193, 244 P.3d 321 (quotations and citations omitted); M. R. App. P 12(g). We consequently do not reach the merits of the claims that the District Court dismissed under Rule 12(b)(6).[2] We therefore affirm the District Court's order to the extent that it dismissed Netzer's claims under Montana's guarantees of inalienable rights, (Mont. Const. art. II, § 3); the State's and its citizens' duties to "maintain a clean and healthful environment," (Mont. Const. art. IX, § 1); the right to equal protection, (Mont. Const. art. II, § 4); and the unenumerated rights retained by the people, (Mont. Const. art. II, § 34).

¶24    *2. Whether the District Court erred in concluding that § 49-2-312(1), MCA, complies with and § 49-2-312(4), MCA, violates, the single-subject and clear-title requirements of Article V, § 11(3), of the Montana Constitution.*

¶25    Article V, Section 11(3), of the Montana Constitution reads:

> Each bill, except general appropriation bills and bills for the codification and general revision of the laws, shall contain only one subject, clearly expressed

---

[2] The Appellants, in their combined Reply and Answering Brief, argue that they were not provided the opportunity to develop the record with additional facts because the District Court prematurely dismissed their claims. At trial, Netzer equivocated about whether they had actual facts in mind that they intended to provide. Netzer first stated in their cross-motion for summary judgment that there were "no material facts in dispute, leaving only questions of law." Then after *Netzer I*, Netzer withdrew their cross-motion for summary judgment and requested more time to "develop the evidentiary record through the discovery process in light of the relevant scientific and other developments." At the hearing on the State's motion to dismiss, Netzer maintained similar arguments, asking the District Court for relief to amend their complaint. The Appellants fail to point to any identifiable facts they planned to develop that would alter the outcome of their case. *See Miller v. Goetz*, 2014 MT 150, ¶¶ 15-18, 375 Mont. 281, 327 P.3d 483; *Rosenthal v. Cnty. of Madison*, 2007 MT 277, ¶¶ 37-43, 339 Mont. 419, 170 P.3d 493. We therefore do not address these arguments on appeal.

11

> in its title. If any subject is embraced in any act and is not expressed in the title, only so much of the act not so expressed is void.

This provision of the 1972 Montana Constitution is "substantively identical" to its 1889 counterpart. *MEA-MFT v. State*, 2014 MT 33, ¶ 8, 374 Mont. 1, 318 P.3d 702; *see* Mont. Const. art. V, 11(3); Mont. Const. art. V, § 23 (1889). In its most basic form, "[t]he test is whether the title is of such a character as to mislead the public or members of the Legislature as to the subject embraced in the act." *State v. Driscoll*, 101 Mont. 348, 354, 54 P.2d 571, 574 (1936). We have articulated five guiding principles a court should use in determining an act's constitutionality under Article V, Section 11(3). *Harper v. Greely*, 234 Mont. 259, 266-67, 763 P.2d 650, 654-55 (1988) (citing *State v. McKinney*, 29 Mont. 375, 380-82, 74 P. 1095, 1096 (1904)).

¶26 First, the purpose of Article V, Section 11(3) is to allow interested individuals to "follow intelligently the course of pending bills" and to "guard against fraud which might result from incorporating in the body of a bill provisions foreign to its general purpose and concerning which no information is given by the title." *State ex rel. Foot v. Burr*, 73 Mont. 586, 588, 238 P. 585, 585 (1925); *see also McKinney*, 29 Mont. at 380-81, 74 P. at 1096.

¶27 Second, we are mindful that "the [L]egislature is a co-ordinating [sic] branch of the government, and that its action, if fair, should be sustained." *MEA-MFT*, ¶ 8 (quoting *McKinney*, 29 Mont. at 381, 74 P. at 1096). Courts consequently give Article V, Section 11(3) a liberal construction, "so as not to interfere with or impede proper legislative functions." *Harper*, 234 Mont. 259 at 266, 763 P.2d at 655; *MEA-MFT*, ¶ 8 (quoting *McKinney*, 29 Mont. at 381, 74 P. at 1096); *Parker v. Yellowstone Cnty.*, 140 Mont. 538,

12

548, 374 P.2d 328, 334 (1962); *State ex rel. Boone v. Tullock*, 72 Mont. 482, 488, 234 P. 277, 279 (1925).

¶28     Third, the Legislature is the best judge of a bill's appropriate title, and a court should not "hold a title void because, in its opinion, a better one might have been used." *McKinney*, 29 Mont. at 381, 74 P. at 1096 (citation omitted).  As such, we "gran[t] deference to the Legislature to fix the title of its own act." *MEA-MFT*, ¶ 8.

¶29     Fourth, a title will be held "generally sufficient if the body of the [a]ct treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the [b]ill, as mentioned in the title."  *MEA-MFT*, ¶ 8 (quoting *McKinney*, 29 Mont. at 381-82, 74 P. at 1096).   Only if "it is apparent that two or more independent and incongruous subjects are embraced in [an act's] provisions, . . . will [it] be held to transgress [Article V, Section 11(3)]."  *Forward Mont. v. State*, 2024 MT 75, ¶ 26, 416 Mont. 175, 546 P.3d 778 (quoting *Evers v. Hudson*, 36 Mont. 135, 146, 92 P. 462, 465-66 (1907)).

¶30     Fifth, if after applying these principles, a court still doubts whether the bill is unconstitutional, the act should be sustained. *McKinney*, 29 Mont. at 382, 74 P. at 1096. That is, if two constructions are possible, in which one would vitiate and the other would validate, the court must construe the statute in favor of its validity.  *Parker*, 140 Mont. at 543, 374 P.2d at 330.  A statute is "presumed constitutional . . . [and] will not be held unconstitutional unless its violation of the fundamental law is clear and palpable."  *Parker*, 140 Mont. at 543, 374 P.2d at 330-31.

13

¶31 The title of HB 702 is "An Act Prohibiting Discrimination based on a Person's Vaccination Status or Possession of an Immunity Passport; Providing an Exception and an Exemption; Providing an Appropriation; and Providing Effective Dates." As pertinent here, the Bill provides in part:

> **Section 1. Discrimination based on vaccination status or possession of immunity passport prohibited—definitions.**
> (1) Except as provided in subsection (2), it is an unlawful discriminatory practice for:
> (a) a person or a governmental entity to refuse, withhold from, or deny to a person any local or state services, goods, facilities, advantages, privileges, licensing, educational opportunities, health care access, or employment opportunities based on the person's vaccination status or whether the person has an immunity passport;
> (b) an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether the person has an immunity passport; or
> (c) a public accommodation to exclude, limit, segregate, refuse to serve, or otherwise discriminate against a person based on the person's vaccination status or whether the person has an immunity passport.
>
> .   .   .
>
> (4) An individual may not be required to receive any vaccine whose use is allowed under an emergency use authorization or any vaccine undergoing safety trials.

Section 49-2-312, MCA (2021 Mont. Laws ch. 418). On appeal, Netzer challenges the District Court's conclusion that Subsection (1) is constitutional under Article V, Section 11(3), of the Montana Constitution. The State cross-appeals, arguing that the District Court erred when it concluded that Subsection (4) is unconstitutional under the same constitutional provision.

14

**Subsection (1)**

¶32    Netzer argues that the subtext or "hidden" meaning of Subsection (1) prohibits employers from mandating that employees provide proof of vaccination or immunity. They posit that courts must evaluate the significant effects of a bill when determining its constitutionality under Article V, § 11(3), of the Montana Constitution. The State contends that a court's review is more formulaic and that a court must constrain its review to the plain language of a bill's text and body and whether it meets the single-subject or clear title requirements. The State further argues that legislators or the public actually must be misled by the bill's title.

¶33    When the body's subjects are not mentioned directly or indirectly in the title, the next question is whether the subjects are germane to its title or "in furtherance of or necessary to accomplish the general objects of a [b]ill, as mentioned in the title." *MEA-MFT*, ¶ 8. From here, a court's determination is "more a question of fact than one of law; there is, and can be, no clear line of demarcation between those matters which fall within and those which fall without the inhibition of the constitutional provision." *Hale v. Belgrade Co.*, 74 Mont. 308, 315, 240 P. 371, 373 (1925).

¶34    Although we have not articulated a "significant effects" standard in our assessment of a statute's constitutionality under Article V, Section 11(3), of the Montana Constitution, we do require that a title not mislead but fairly apprise the public and legislators of its most pertinent subjects. *Forward Mont.*, ¶ 26 ("The purposes of this section . . . are to restrict the [L]egislature . . . [to] subjects . . . made known to the lawmakers and to the public, to

the end that anyone interested may follow intelligently the course of pending bills; to prevent the legislators and the people generally being misled by false or deceptive titles . . . . " (quoting *Burr*, 73 Mont. at 588, 238 P. at 585); *Helena v. Omholt*, 155 Mont. 212, 220-21, 468 P.2d 764, 768 (1970) ("The test under this provision of the Montana Constitution is simply this—Is the title of legislation in question of such character as to mislead the public or members of the [L]egislature as to the subjects embraced?" (citing *Driscoll*, 101 Mont. at 354, 54 P.2d at 573-74; *Arps v. State Hwy. Comm'n*, 90 Mont. 152, 171, 300 P. 549, 557 (1931)); *see also* Mont. Const. art. V, § 23 (1889).[3]  Even when the plain language of an act's body may be germane or in furtherance of the general object expressed in its title, the law nonetheless may fail if it is somehow still misleading.  *Cf. Hale*, 74 Mont. at 311-17, 240 P. at 371-73; *Burr*, 73 Mont. at 589-90, 238 P. at 585-86; *State ex rel. Holliday v. O'Leary*, 43 Mont. 157, 167, 115 P. 204, 207 (1911).

¶35    When questioning whether an act's title is misleading, actual deception is not a part of our test.   We instead apply an objective standard and assess whether the title is "reasonably calculated to give notice of the contents of the bill" to interested individuals so that they may follow "intelligently."  *State v. Duncan*, 74 Mont. 428, 436, 240 P. 978, 980 (1925); *Forward Mont.*, ¶ 26; *see also* 1A Shambie Singer, *Sutherland Statutory Construction*, § 17:2 (8th ed.) ("The general test is whether a title is uncertain, misleading,

---

[3] Article V, Section 23, of the 1889 Montana Constitution commentary clarifies that "[a] subject not expressed in the title is one which is so foreign to the matter expressed in the title that one reading the act with the title in his mind would be surprised to find it in the body of the act, and could not reasonably have expected to find it in the act . . . . [T]he title must fairly suggest or furnish a clue to the subject dealt with in the act." (citations omitted).

or deceptive to the average reader. A title is constitutional where it is sufficient to direct a person with an ordinary, reasonably inquiring mind to an act's body.").

¶36    For example, in *State ex rel. Foot v. Burr*, the title of the act was "an act to amend sections 4318 and 4327 of the Revised Code of the State of Montana, 1921, relating to changing the boundaries of Fergus and Judith Basin Counties." 73 Mont. at 589-90, 238 P. at 585-86. The act changed the boundaries of Fergus and Judith Basin Counties; as a result, Petroleum County was effectively erased. *Burr*, 73 Mont. at 589-90, 238 P. at 585-86. Although the boundaries of Judith and Fergus Basin Counties were in a close relationship with Petroleum County, without technical skills or intimate knowledge of the area, a legislator or the public could not discern from the act's title or text its effects on Petroleum County. *Burr*, 73 Mont. at 589-90, 238 P. at 585-86. The title thus was insufficient because it was misleading as to the pertinent subject of "completely swallow[ing] up" Petroleum County. *Burr*, 73 Mont. at 589-90, 238 P. at 585-86; *see also Hale*, 74 Mont. at 311-17, 240 P. at 371-73 (holding that an act's title announcing its plan to amend a statute relative to "the authentication of copies of appeals to the supreme court and concerning abbreviated records on appeal" was insufficient to place legislators and the public on notice that its body contained a time limitation for filing transcripts on appeal); *O'Leary*, 43 Mont. at 167, 115 P. at 207 (concluding that the title, "An act to provide for nonpartisan nominations for judicial offices" was insufficient and misleading as to the provision prohibiting partisan judicial nominations).

¶37    In contrast, a law titled, "An Act to Limit, Regulate and License the Manufacture and Sale of Any and All Liquors or Beverages That May Hereafter be Manufactured, Sold or Dispensed in the State of Montana," was sufficiently clear to uphold a criminal conviction of "unlawfully exposing and keeping for sale intoxicating liquor." *Driscoll*, 101 Mont. at 350, 352, 54 P.2d at 572. The defendant in *Driscoll* contended that the law was unconstitutional because the title was silent on a number of particulars, including its lack of reference to a new liquor control board, the state hiring persons to buy and sell liquor in the name of the state at state liquor stores, the control of individual purchase or consumption of liquors, or the accrual of profits from liquor sales. *Driscoll*, 101 Mont. at 353, 54 P.2d at 573. After discussing this Court's already robust precedent on the constitutional limitation and its liberal construction of the same, the Court held that "all of these so-called hidden subjects were germane, relative and pertinent, to limiting and regulating the manufacture and sale of intoxicating liquor." *Driscoll*, 101 Mont. at 357, 54 P.2d at 575. *See also Lewis & Clark Cnty. v. Indus. Accident Bd.*, 52 Mont. 6, 8-12, 155 P. 268, 269-71 (1916) (holding that, despite then-prevailing law that "general legislation is intended primarily for the subjects and not for the sovereign" and that a county was not liable for damages to its injured employee, counties and county employees were lawfully within the provisions of a new Workmen's Compensation Act—though not mentioned in the Act's title—because the title "fairly indicates the general subject of the Act").

¶38    Netzer asks this Court to invalidate HB 702 because it "completely fail[ed] to apprise a legislator or the public of the nature, scope, or consequences of its operation."

1A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 18:6 (7th ed. 2009). The operative language in the title reads, "An Act Prohibiting Discrimination based on a Person's Vaccination Status or Possession of an Immunity Passport." From this, an ordinary, reasonable inquiring mind would not be surprised to find subjects on discrimination regarding a person's having obtained or not obtained a vaccine, immunity passport, or a combination of any of these. HB 702 does not "completely fail" because the plain language of its title gave interested members of the public and Legislature notice and the opportunity to intelligently follow HB 702.

¶39 The State concedes that an employer is free to request proof of vaccination or immunity and even adopt a policy that, without proof of vaccination, an individual is presumptively unvaccinated. Section 49-2-312(1), (3)(a), MCA. An employer may incentivize employees to vaccinate so long as it is "not so substantial to be coercive," may require all employees on the premises to wear masks, and may suggest that an employee who has not shown proof of vaccination wear a mask. *House Bill 702: Frequently Asked Questions*, Mont. Dep't of Lab. & Indus., https://perma.cc/GMM9-5NXM (last visited October 1, 2025). But HB 702 establishes that individuals and entities may not subject a person to adverse conditions or treatment based on the person's vaccination status or possession of an immunity passport. The result of HB 702 is that individuals and entities may not require someone to provide proof of vaccination or to obtain a vaccine as a condition of employment, access to facilities, goods, or services. Section 49-2-312(1), MCA. According to HB 702's title, this is not a surprise or a "hidden" effect.

19

¶40    This case is distinguishable from *Burr*, *Hale*, and *O'Leary* because Netzer does not posit additional, determinative facts that might overcome the presumption of HB 702's constitutionality and render its title misleading. Unlike *Burr*, Netzer does not show how either the title or the body of HB 702 would require technical expertise for a reasonable mind to be able to understand. *See Burr*, 73 Mont. at 589-90, 238 P. at 585-86. And unlike in *Hale* and *O'Leary*, Netzer does not flag any established law regarding vaccination or discrimination that would render HB 702 redundant or contrary and thus deceptive or misleading. *See Hale*, 74 Mont. at 310-11, 240 P. at 371 (noting that the act addressed already established appellate court rules, which until then the Legislature had not attempted to govern); *see also O'Leary*, 43 Mont. at 165, 115 P. at 206 (finding it unreasonable that a person would suspect that the "Legislature would solemnly enact a statute upon [a] subject which was already covered by another statute in precisely the same [manner]").

¶41    "[T]he title is generally sufficient if the body of the act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the [b]ill, as mentioned in the title." *MEA v. MFT*, ¶ 8. Netzer fails to substantiate their argument that the general rule should not apply. They point to HB 702's title and Subsection (1), claiming that in some way both are latently misleading and in violation of Article V, Section 11(3), of the Montana Constitution. Netzer, however, elaborates no further than to argue that the Bill is improper because it was enacted during the COVID-19 pandemic. This is not

20

enough to overcome the manifest accord between the plain language of the Bill's title and the subjects in Subsection (1).

¶42 An act's invalidity because its provisions were not sufficiently expressed by the title must be "clear and palpable," and the "objections should be grave." *Driscoll*, 101 Mont. at 355, 54 P. at 574. Netzer has not shown that the title, "An Act Prohibiting Discrimination based on a Person's Vaccination Status or Possession of an Immunity Passport; Providing an Exception and an Exemption; Providing an Appropriation; and Providing Effective Dates[,]" was gravely misleading or palpably deceptive as to Subsection (1).

¶43 Like the District Court, we see no "hidden" meaning in Subsection (1). The District Court concluded that this subsection set out to accomplish what HB 702's title purported to do: to prohibit discrimination against a person because of their vaccination status or possession of an immunity passport. The District Court correctly determined that Subsection (1) did not violate Article V, Section 11(3), of the Montana Constitution. We affirm the District Court's ruling that § 49-2-312(1), MCA complies with the clear-title requirement of Article V, § 11(3).

**Subsection (4)**

¶44 The State argues that vaccine requirements disparately impact individuals who do not wish to receive those vaccines; HB 702 eliminates such requirements for certain vaccines. The State maintains that Montana courts do not strictly construe titles under Article V, Section 11(3), of the Montana Constitution; rather, a court must "gran[t] deference to the Legislature to fix the title of its own acts," and Subsection (4)'s subject is

21

in "furtherance of . . . the general object of" HB 702, as mentioned in its title. *MEA-MFT*, ¶ 8. Netzer counters that Subsection (4)'s universal prohibition against requiring an individual to get a vaccine under emergency use authorization or undergoing safety trials is unrelated to HB 702's antidiscrimination title. They claim that the bill's title is "restrictive," and the court therefore should construe its meaning narrowly or strictly.

¶45 The presumption of constitutionality guides the construction of an act's title and body. *Harper*, 234 Mont. at 267, 763 P.2d at 655 (quoting *McKinney*, 29 Mont. at 382, 74 P. at 1096); *Driscoll*, 101 Mont. at 355, 54 P. at 574; *Tullock*, 72 Mont. at 489, 234 P. at 279. For this reason, we generally construe titles liberally in favor of a statute's constitutionality. *McKinney*, 29 Mont. at 386, 74 P. at 1098. It is not essential that the Legislature choose the best, most accurate title; the title instead need only reasonably suggest its legislative purpose. *McKinney*, 29 Mont. at 386, 74 P. at 1098.

¶46 The Legislature may either fix a title describing its purpose in "extensive or minut[e]" detail or offer a title that is more comprehensive. *State v. Ross*, 38 Mont. 319, 322-23, 99 P. 1056, 1057 (1909). So long as the act "looks to but a single purpose or object, . . . the [a]ct may include every matter germane to and in furtherance of [the title's stated] purpose or object." *State v. Ross*, 38 Mont. at 322-23, 99 P. at 1057. The title and subject "must correspond, not literally, but substantially, and such correspondence is to be determined in view of the subject matter to which the legislation relates." *Evers*, 36 Mont. at 144-45, 92 P. at 465 (citation omitted). Germane means "in close relationship; appropriate; relevant; pertinent." *Driscoll*, 101 Mont. at 354, 54 P.2d at 573; *Hale*, 74

22

Mont. at 315, 240 P. at 373. "It is not necessary . . . that a title shall embody the exact limitations or qualifications contained in the bill," and our construction will not employ "technical interpretations upon mere . . . phraseology." *Evers*, 36 Mont. at 143, 92 P. at 465. The single-subject requirement "relates to matters of substance . . . and not merely matters of form." *Evers*, 36 Mont. at 142, 92 P. at 464.

¶47 We have applied strict statutory construction under Article V, Section 11(3), of the Montana Constitution when a bill contains an additional separate subject not reflected in the title. *See Mont. Auto. Ass'n v. Greely*, 193 Mont. 378, 398, 632 P.2d 300, 311 (1981) (striking from ballot measure that amended and expanded the Lobbying Act a section requiring disclosure of political contributions to candidates or political action committees); *Sigety v. State Bd. of Health*, 157 Mont. 48, 482 P.2d 574 (1971) (holding act unconstitutional because the bill's title expressed that it legislated only dredge mining but also included sluice mining in its body); *Coolidge v. Meagher*, 100 Mont. 172, 46 P. 684 (1935) (invalidating act because title included only officers but the act's body discussed witnesses).

> The purpose of requiring singleness of subject is to prevent the practice of embracing in the same bill incongruous matters which have no relation to each other or to the subject specified in the title, so that measures may not be adopted without attracting attention to them . . . . The test under this provision of the Montana Constitution is simply whether the title is of such character as to mislead the public as to the subjects embraced.

*Mont. Auto. Ass'n*, 193 Mont. at 398, 632 P.2d at 311 (quotations and citations omitted). When a law is challenged because the title does not clearly express what the law does, a court will construe the title strictly only if the "legislative act contains a particular

23

limitation or restriction." 82 C.J.S. *Statutes* § 239 (2025). Such titles "descen[d] to particulars and details" and may be affirmatively misleading when the act treats subjects outside of the title's narrow scope. 82 C.J.S. *Statutes* § 239. As courts may not constrict a title's meaning to exclude subjects naturally connected to an act's general purpose, we also may not broaden a title's meaning to include subjects not logically connected to an act's narrow, stated purpose. 82 C.J.S. *Statutes* § 239; Singer & Singer, *supra*, § 18:6.

¶48 The District Court reasoned that Subsection (4)'s prohibition against requiring vaccines at certain regulatory stages was unrelated to the title's antidiscrimination purpose. The District Court strictly construed HB 702's title and stated that the title "d[id] not reference nor provide for bodily autonomy; the title is based off another's response to an individual's vaccination status, not the individual's choice whether to receive a vaccine undergoing safety trials or approved for emergency use." It concluded that there was no correlation between prohibiting vaccination mandates for a certain vaccines and antidiscrimination based on vaccination status.

¶49 HB 702's title, "Prohibiting Discrimination based on a Person's Vaccination Status or Possession of an Immunity Passport," does not identify a particular subset of vaccines but indicates a broad prohibition against adverse treatment of a person arising from the person's receipt of a vaccine, or lack thereof. In other words, it is not "particular" in its limitations. "Generality or comprehensiveness in [a] title is no objection, provided the title is not misleading or deceptive and fairly directs the mind to the subject of the law in a way calculated to attract the attention truly to the matter which is proposed to be legislated on."

24

*Evers*, 36 Mont. at 143, 92 P. at 464. Emergency use authorization vaccines and vaccines undergoing safety trials are subsets of vaccines generally and thus are inherently connected to an individual's "vaccination status." At the time HB 702 was introduced to the Legislature and the public, vaccination and immunity passports were strongly associated with vaccines still undergoing clinical trials or under emergency use authorization.[4] Provisions related to these topics would not be unreasonable or surprising in a bill dealing generally with "vaccination status." The title does not "descen[d] to particulars and details." 82 C.J.S. *Statutes* § 239.

¶50    "A title need not disclose the means and instrumentalities provided in the body of the [a]ct for accomplishing its purpose, where all the provisions are reasonably necessary as means for attaining the object indicated by the subject which is expressed in the title . . . ." *Tullock*, 72 Mont. at 491, 234 P. at 280 (quotation omitted); *see also McKinney*, 29 Mont. at 384-85; 74 P. at 1097 ("The title of the [a]ct is general. Its body may contain any provisions necessary to carry the purpose of the [a]ct into effect."); *Driscoll*, 101 Mont. at 354, 54 P. at 573 ("It is not necessary that the title shall embody the exact method of application or procedure where the general object is plainly expressed.") (citation omitted); *Ross*, 38 Mont. at 323, 99 P. at 1057 ("The title of an [a]ct may be as comprehensive as the legislative judgment dictates, provided only that it looks to but a single purpose or object,

---

[4] *See generally* Authorization of Emergency Use of Two Biological Products During the COVID-19 Pandemic; Availability, 86 Fed. Reg. 5,200, 5,200-10 (Jan. 19, 2021); *Interim position paper: consideration regarding proof of COVID-19 vaccination for international travelers*, World Health Organization (Feb. 5, 2021), https://perma.cc/WC5Y-V7AE.

and the Act may include every matter germane to, and in furtherance of, that purpose or object.").

¶51 Here, given its broad reference to "vaccination status," we conclude that the title of HB 702 is entitled to liberal construction in favor of its constitutionality. *MEA-MFT*, ¶ 8. The title indicates a law that broadly prohibits unfavorable treatment of any person based on whether the person has been vaccinated against a disease. Choosing not to obtain a certain vaccine is a "vaccination status." Prohibiting a mandate for vaccines that have not completed safety trials reasonably relates to the purpose that those who abstain from such vaccines not suffer adverse consequences solely by that choice. The District Court's strict construction and narrowing focus was improper in light of the title's broad scope of discrimination.

¶52 Subsection (4) is not an "independent [or] incongruous subject" or "foreign to its general purpose" as set forth in HB 702's title. *Forward Mont.*, ¶ 26; *Burr*, 73 Mont. at 588, 238 P. at 585; it is instead a provision pertinent to protecting a person against discrimination for not receiving a limited subset of vaccines. HB 702's title was "reasonably calculated to give notice of the contents of the bill" to interested individuals so that they may follow "intelligently." *State v. Duncan*, 74 Mont. at 436, 240 P. at 980; *Forward Mont.*, ¶ 26. We defer to the "Legislature to fix the title of its own acts" and will not hold an act invalid because "a better [title] might have been used." *MEA-MFT*, ¶ 8 (quoting *Harper*, 234 Mont. at 266, 763 P.2d at 655); *Driscoll*, 101 Mont. at 354, 54 P. at 574. Liberally construing Article V, Section 11(3) "so as not to interfere with or impede

26

proper legislative functions," we conclude that the Legislature fixed a fair, if imperfect, title to HB 702. *Harper*, 234 Mont. at 266, 763 P.2d at 655; Parker, 140 Mont. at 548, 374 P. 2d at 334; *MEA-MFT*, ¶ 8 (quoting *McKinney*, 29 Mont. at 381, 74 P. at 1096); *State v. Tullock*, 72 Mont. at 487, 234 P. at 279. Netzer fails to meet his "heavy burden" of showing the unconstitutionality of HB 702 beyond a reasonable doubt. *Harper*, 234 Mont. at 269, 763 P.2d at 656 (citations omitted); *Driscoll*, 101 Mont. at 355, 54 P. at 574. We therefore reverse the District Court's ruling invalidating Subsection (4).

## CONCLUSION

¶53 The District Court cured its procedural error responding to Netzer's Rule 59(e) motion when it issued a supplemental order correcting the deficiencies in its original order. The District Court ultimately and correctly applied our instructions on remand and did not impermissibly give preclusive effect to its preliminary injunction determination or to our decision affirming the denial. The District Court did not abuse its discretion or commit an error of law when it partially dismissed Netzer's claims under Article II, Sections 3, 4, and 34, and Article IX, Section 1, of the Montana Constitution. We therefore affirm the District Court's dismissal of these claims. We conclude that, under Article V, § 11(3), of the Montana Constitution, the District Court did not err in upholding § 49-2-312(1), MCA, and did err in striking § 49-2-312(4), MCA. We therefore affirm its ruling on Subsection (1) and reverse on Subsection (4). We express no view on any other constitutional challenges or claims not properly presented.

/S/ BETH BAKER

27

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE